LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
  melanie.blunschi@lw.com
Morgan E. Whitworth (Bar No. 304907)
  morgan.whitworth@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Daniel R. Gherardi (Bar No. 317771)
  daniel.gherardi@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.328.4600

*Attorneys for Defendants Extreme Networks, Inc., Edward B. Meyercord III, Rémi Thomas, Cristina Tate, Kevin Rhodes, Norman Rice, and Jonas Brown*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXTREME NETWORKS, INC., EDWARD B. MEYERCORD III, RÉMI THOMAS, CRISTINA TATE, KEVIN RHODES, NORMAN RICE, JONAS BROWN<br><br>Defendants. | Case No. 3:24-cv-05102-TLT<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S INQUIRIES FOR HEARING ON 8/12/2025**<br><br>Hearing: August 12, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 9—19th Floor<br>Judge: Hon. Trina L. Thompson |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Defendants respectfully submit these responses to the Court's Inquiries (Dkt. 85).

## I.    FALSITY

**A.    <u>Alleged Channel Stuffing</u>:** At the pleading stage, Plaintiffs must allege particularized facts that render the challenged statements misleading. The Ninth Circuit has remarked that channel stuffing claims are especially susceptible to "speculation made in hindsight," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998), and district courts have noted legitimate reasons for a company attempting to achieve sales earlier, *In re ICN Pharm., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1061-62 (C.D. Cal. 2004). Here, Plaintiffs do not challenge any revenue numbers, and so particularized allegations about the challenged sales practices are essential to allege that anything actually wrongful occurred. Specific transactions, shipments, customers, times, or dollar amounts, are the types of corroborating details necessary to support such a theory at the pleading stage. *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1147 (C.D. Cal. 2018) (dismissing securities claim and noting that "[c]hannel stuffing claims are disfavored in this circuit."); *ICN*, 299 F. Supp. 2d at 1062; Mot. (Dkt. 74) at 9. Otherwise, there is no way to discern improper channel stuffing (which could render revenue statements misleading) from aggressive tactics that result in legitimate sales.

Plaintiffs cannot meet this standard and have given up on trying. Instead, they cite two cases where courts considered allegations that defendants' revenue statements were misleading because they concealed that sales were from unsustainable channel-stuffing. Opp. (Dkt. 81) at 4-5; *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *11 (N.D. Cal. Aug. 17, 2022); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274 (D. Or. June 27, 2017). The courts in *Plantronics* and *Murphy* did not require plaintiffs to identify specific transactions to adequately plead channel-stuffing, but instead considered plaintiffs' well-pled, particularized facts demonstrating that the companies' sales practices were (i) new, (ii) well-known to senior management, and (iii) unsustainable. *See Plantronics*, 2022 WL 3653333, at *11 ("[T]he Company engaged in channel stuffing that built up channel inventories during the Class Period ***to a degree that was greater than under its prior sales practice*** before the Polycom acquisition.").

Plaintiffs still have not alleged particularized facts contradicting Defendants' statements,

and they do not allege any facts suggest that Extreme's sales practices were unsustainable.  On the contrary, they were sustained for *six years* after FE-1 claims the channel stuffing commenced. Instead, Plaintiffs do exactly what the *Steckman* Court rejected: they speculate, without factual support, that Extreme's demand slowdown—which came after the global post-COVID supply chain issues began to ease—must have been the manifestation of years of consistent sales practices. That does not meet Plaintiffs' burden even under *Plantronics* and *Murphy*.

Indeed, this case is a far cry from Plaintiffs' cited cases. In *Plantronics*, plaintiffs alleged the defendant began channel stuffing following the acquisition of another company, causing the company to meet or exceed guidance, until an internal investigation to reveal that acquired entity channel-stuffing was and the company fired the architect of the scheme. 2022 WL 3653333, at *11-13, *19. And far from six years, the practice in *Plantronics* lasted only six quarters. *Id.* at *1. In *Murphy*, the plaintiffs alleged PCC "took the unusual step of providing investors with a concrete earnings target," then worked aggressively to "pull in" future sales by persuading customers to accept early delivery of product.  2017 WL 3084274, at *2. This scheme fell apart prior to the challenged statements when one large customer stopped holding its inventory—meaning PCC could no longer pull in sales from it. *Id.* at *3. Yet the defendants falsely assured the public there would be no long-term decline in demand. *Id.* This scheme lasted less than two years. *Id.* at *1.

While Defendants believe Plaintiffs should be subject to the well-settled heightened pleading requirements for alleging channel-stuffing adopted by the Ninth Circuit, their allegations fail even under the standard created in *Plantronics* and *Murphy*.

**B.**     **Backlog:** Plaintiffs do not adequately allege any statement related to "firm" backlog is misleading. *First*, Extreme repeatedly disclosed that backlog was not guaranteed, that customers could cancel their contracts or reschedule them, and even more clearly that Extreme did not believe the backlog was necessarily indicative of future revenues for any future period. Mot. (Dkt. 74) at 5-6, 15-17. Only one challenged statement (¶ 422) used the word "firm," and it was in the context of end-user demand (*i.e.*, not the distributors who were Extreme's primary customers). Plaintiffs assume "firm" means something concrete, but investors read all statements in context of all information available to them—including Extreme's robust disclosures. Plaintiffs have not

adequately alleged that describing end-user demand as "firm" one time "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

*Second*, Defendants' description of backlog as "firm" in unchallenged SEC filings, *e.g.* Ex. 9, is an opinion statement. Mot. (Dkt. 74) at 18.  Extreme stated "Although **we believe** the orders included in the backlog are firm, all orders are subject to possible rescheduling by customers, and cancellation by customers." Ex. 9 (Dkt. 74-11) at 9. Plaintiffs allege no facts suggesting any Defendant did not subjectively believe orders were firm, nor that such a belief would have been objectively unreasonable.  Mot. (Dkt. 74) at 18-19.  And Plaintiffs do not allege any particularized instance where Defendants were aware of double-booking or cancellation in any material amount at the time of any challenged statement.  Mot. (Dkt. 74) at 19.  Instead, Plaintiffs' backlog claim amounts to fraud-by-hindsight: Defendants warned that backlog would normalize, but they did not anticipate the rate at which it would normalize. Yet "[t]he fact that the backlog included later-removed contracts does not make the backlog figures false at the time they were publicly disclosed." *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 945 (N.D. Cal. 2010).

**II.    SCIENTER:** A unanimous string of recent Ninth Circuit cases has (i) taken notice of SEC filings containing stock holding information and (ii) held that increased stock ownership negates scienter. *See* Mot. (Dkt. 74) at 20; Reply (Dkt. 83) at 11; *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *Veal v. LendingClub Corp.*, 2021 WL 4281301, at *2 (9th Cir. 2021); *Cai v. Eargo, Inc.*, 2025 WL 66041, at *2 (9th Cir. Jan. 10, 2025). So has this Court. *Petersen v. TriplePoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *13 (N.D. Cal. Aug. 7, 2024).

**III.    LOSS CAUSATION:** None of the alleged partial disclosures reveals channel-stuffing—Plaintiffs concede they do not allege anyone even mentioned this possibility—or even said anything about Extreme's backlog that Extreme hadn't already disclosed.  In *Plantronics*, the company admitted wrongdoing and publicly fired the responsible executive.  And this Court can and should consider context that could have contributed to the alleged decline in Extreme's stock value, including the unpredictable impacts of an unprecedented pandemic that heavily impacted technology companies. Reply (Dkt. 83) at 15 (citing *Petersen*, 2024 WL 5384678, at *13).

Dated: August 12, 2025                        Respectfully submitted,

                                              LATHAM & WATKINS LLP


                                         By  */s/ Melanie M. Blunschi*
                                             Melanie M. Blunschi (Bar No. 234264)
                                               melanie.blunschi@lw.com
                                             Morgan E. Whitworth (Bar No. 304907)
                                               morgan.whitworth@lw.com
                                             505 Montgomery St., Suite 2000
                                             San Francisco, CA 94111
                                             Telephone: +1.415.391.0600

                                             Daniel R. Gherardi (Bar No. 317771)
                                               daniel.gherardi@lw.com
                                             140 Scott Drive
                                             Menlo Park, CA 94025
                                             Telephone: +1.650.328.4600

                                             *Attorneys for Defendants Extreme
                                             Networks, Inc., Edward B. Meyercord
                                             III, Rémi Thomas, Cristina Tate, Kevin
                                             Rhodes, Norman Rice, and Jonas Brown*