**LABATON KELLER SUCHAROW LLP**
Lauren A. Ormsbee (*pro hac vice*)
Jesse L. Jensen (*pro hac vice*)
Danielle S. Lazarus (*pro hac vice*)
Alexandra E. Forgione (*pro hac vice*)
Jacqueline E. Lacovara (*pro hac vice*)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
jjensen@labaton.com
dlazarus@labaton.com
aforgione@labaton.com
jlacovara@labaton.com

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (Bar No. 250893)
Reed R. Kathrein (Bar. No. 139304)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

*Liaison Counsel for the Class*

*[Additional Counsel appear on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, on Behalf of Itself and All Others Similarly Situated,<br><br><br><br>Plaintiff,<br><br>v.<br><br><br>EXTREME NETWORKS, INC., EDWARD B. MEYERCORD III, RÉMI THOMAS, CRISTINA TATE, KEVIN RHODES, NORMAN RICE, JONAS BROWN<br><br>Defendants. | Case No.: 3:24-cv-05102-TLT<br><br>**REPLY IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVES, AND APPOINT CLASS COUNSEL**<br><br>Date:  July 7, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Trina L. Thompson<br>Courtroom:   9, 19th Floor |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...........................................................................................................ii

**I.    INTRODUCTION**.............................................................................................................1

**II.   PROCEDURAL HISTORY** .............................................................................................2

**III.  ARGUMENT** ....................................................................................................................3

      A.   Defendants Concede *Basic's* Presumption of Reliance, And Fail To Put Forth Any Evidence Proving The Absence Of Price Impact...................................................3

           1.    Defendants Provide No Expert Evidence On Price Impact .............................4

           2.    Defendants Concede Front-End Price Impact.................................................4

           3.    Defendants' Back-End Price Impact Arguments Fail, And Defendants Cannot Prove Its Absence By A Preponderance of The Evidence .................5

           4.    The *Basic* Presumption Applies to Scheme Liability Claims, As Does, In The Alternative*, Affiliated Ute* ...............................................................9

      B.   Damages Are Measurable On A Classwide Basis .......................................................9

           1.    Plaintiffs' Universally Accepted Standard For Measuring Classwide Damages Is Capable Of Addressing Changes In Artificial Inflation.............10

           2.    The Damages Methodology Applies Equally To Plaintiffs' Claims, And Can Address Any Potential Adjustments To Artificial Inflation ..........11

           3.    The Out-Of-Pocket Methodology Is Capable Of Addressing Confounding Information, Industrywide Trends, and The Alternative Materialization Of The Risk Theory of Liability At The Merits Stage .........13

**IV.   CONCLUSION**.................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re AGS, Inc. Securities Litigation*,
   2024 WL 581124, at *5 (D. Nev. Feb. 12, 2024) ................................................................. 13

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021)..................................................................................................... 11

*AMI v. Alphabet Inc.*,
   2026 WL 1382950 (N.D. Cal. May 18, 2026) ........................................................ 2, 6, 8, 10

*In re Apple Inc. Sec. Litig.*,
   2022 WL 354785 (N.D. Cal. Feb. 4, 2022)................................................................ 3, 5, 6, 8

*In re Boeing Co. Aircraft Sec. Litig.*,
   2026 WL 734721 (N.D. Ill. Mar. 16, 2026)............................................................................ 10

*In re BofI Holding, Inc. Sec. Litig.*,
   2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) ...................................................................... 14

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
   2023 WL 2932485 (D. Conn. Apr. 13, 2023) .......................................................................... 4

*In re Celgene Corp. Sec. Litig.*,
   2020 WL 8870665 (D.N.J. Nov. 29, 2020)............................................................................... 7

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ..................................................................... 4, 5

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
   2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)........................................................................ 10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ...........................................................................................................*passim*

*Cooper v. Thoratec Corp.*,
   2018 WL 2117337 (N.D. Cal. May 5, 2018) ........................................................................... 4

*Crews v. Rivian Auto., Inc.*,
   2024 WL 3447988 (C.D. Cal. July 17, 2024) .......................................................................... 6

*Drake v. Bayer Healthcare LLC*,
   2026 WL 1079027 (9th Cir. Apr. 21, 2026) ....................................................................... 9, 10

*In re Enovix Corp. Sec. Litig.*,
   2026 WL 1078569 (N.D. Cal. Apr. 21, 2026) ......................................................................... 7

*Ferris v. Wynn Resorts Ltd.*,
2023 WL 2337364 (D. Nev. Mar. 1, 2023)...............................................................................3

*In re FirstEnergy Corp. Sec. Litig.*,
2026 WL 1179398 (S.D. Ohio Apr. 30, 2026) ..................................................................9, 13

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021)...............................................................................................................3, 5

*Gambrill v. CS Disco, Inc*,
2025 WL 3771433 (W.D. Tex. Dec. 16, 2025)........................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................................................................................................3

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................................................................3

*In re HealthSouth Corp. Sec. Litig.*,
257 F.R.D. 260 (N.D. Ala. 2009)............................................................................................9

*Homyk v. Chemocentryx*,
2024 WL 1141699 (N.D. Cal. Mar. 6, 2024) ..........................................................................4

*Jaeger v. Zillow Grp., Inc.*,
2025 WL 2741642 (9th Cir. Sept. 26, 2025) ......................................................................4, 6

*Junge v. Geron Corp.*,
2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .........................................................................15

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017)..................................................................................................9

*Lytle v. Nutramax Lab'ys., Inc.*,
114 F.4th 1011 (9th Cir. 2024)............................................................................. 2, 9, 10, 15

*In re Mattel, Inc. Sec. Litig.*,
2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ...........................................................................6

*Mulderrig v. Amyris, Inc.*,
340 F.R.D. 575 (N.D. Cal. 2021) ........................................................................................8, 14

*In re NVIDIA Corp. Sec. Litig.*,
2026 WL 821418 (N.D. Cal. Mar. 25, 2026)...........................................................................3

*Okla. Firefighters Pension & Ret. Sys. v. Musk*,
2026 WL 878962 (S.D.N.Y. Mar. 31, 2026) ......................................................................9, 13

*Pampena v. Musk,*
2025 WL 2224423 (N.D. Cal. Aug. 5, 2025).......................................................................... 13

*Pampena v. Musk,*
2026 WL 539336 (N.D. Cal. Feb. 26, 2026)....................................................................... 9, 13

*Pardi v. Tricida, Inc.,*
2024 WL 4336627 (N.D. Cal. Sept. 27, 2024) ....................................................................... 8

*Pirnik v. Fiat Chrysler Autos. N.V.,*
327 F.R.D. 38 (S.D.N.Y. 2018) ............................................................................................... 8

*S.E.C. v. Loomis,*
969 F. Supp. 2d 1226 (E.D. Cal. 2013)................................................................................. 11

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,*
349 F.R.D. 606 (S.D.N.Y. 2025) ......................................................................................... 9, 13

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.,*
2025 WL 1243818 (N.D. Cal. Apr. 25, 2025) (Thompson, J.), *leave to appeal
denied*, 2025 WL 2028400 (9th Cir. July 17, 2025) ..........................................................*passim*

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.,*
798 F. Supp. 3d 416 (S.D.N.Y. 2025)................................................................................... 10

*In re Snap Inc. Sec. Litig.,*
334 F.R.D. 209 (C.D. Cal. 2019) ............................................................................................ 5

*Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.,*
2026 WL 817221 (N.D. Cal. Mar. 23, 2026)......................................................................*passim*

*In re Vaxart, Inc. Securities Litigation,*
738 F. Supp. 3d 1259 (N.D. Cal. 2024) ................................................................................ 13

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.,*
2016 WL 4138613 (E.D. Pa. Aug. 4, 2016)............................................................................ 7

*Waggoner v. Barclays,*
875 F.3d 79 (2d Cir. 2017).................................................................................................. 6, 7

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.,*
738 F. Supp. 3d 1182 (N.D. Cal. 2024) ................................................................................ 11

**Federal Rules Of Civil Procedure**

Fed. R. Civ. P. 23 .............................................................................................................. 1, 10

## I.     INTRODUCTION

This action concerns false and misleading statements that inflated Extreme's stock price and concealed an extensive channel-stuffing scheme, and as such "fit[s] Rule 23 'like a glove.'" *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2025 WL 1243818, at *8 (N.D. Cal. Apr. 25, 2025) (Thompson, J.), *leave to appeal denied*, 2025 WL 2028400 (9th Cir. July 17, 2025).[1] The Opposition confirms as much. Defendants concede that Plaintiffs satisfy five of Rule 23's six requirements: numerosity, commonality, typicality, adequacy, and superiority, and that common issues of liability related to falsity, materiality, scienter, and loss causation predominate. Defendants also accept that Plaintiffs' expert, Dr. Matthew Cain, established that Extreme common stock trades in an efficient market such that this action qualifies for the *Basic* presumption of reliance. Those concessions alone demonstrate that common issues sufficiently predominate over individual issues in satisfaction of Rule 23. Defendants argue only two things: (1) that they have rebutted the undisputed presumption of reliance afforded to the Class by proving a lack of price impact by a preponderance of evidence, and (2) that Dr. Cain's universally accepted "out-of-pocket" damages methodology is incapable of calculating classwide damages. These arguments fail and the Class should be certified.

***The Presumption of Reliance Applies Classwide.*** Defendants have not carried their heavy burden of affirmatively ***proving*** a lack of price impact ***by a preponderance of the evidence***. Defendants offer ***no expert evidence***: their expert, Dr. David Smith, was not asked to opine on price impact and offers no opinion on whether it is absent. Defendants' Opposition is equally unimpressive. Defendants do not even address front-end price impact, and, to avoid any doubt, Dr. Cain demonstrates, with evidence, how Defendants' misstatements caused front-end price impact through statistically significant price movements in Extreme's stock. On this ground alone, Defendants' challenge fails. Further, with respect to back-end price impact, Defendants concede that each corrective disclosure was followed by a statistically significant price decline and offer ***no expert***

---

[1] Capitalized terms not otherwise defined have the same meaning set forth in Lead Plaintiffs' Motion to Certify Class (ECF 140) (the "Motion"). "P.Ex." refers to exhibits to the Declaration of Lauren A. Ormsbee in Support of Plaintiffs' Motion. "Cain Rpt." refers to the Expert Report of Dr. Matthew Cain (ECF 140-2), and "Cain RR" refers to Dr. Cain's Expert Report, attached hereto as P.Ex. 2. "DB" or "Opposition" refers to Defendants' Opposition to the Motion (ECF 146). Unless otherwise noted, all emphasis is added, and internal quotations, citations, and subsequent history are removed.

*opinion* and *no evidence* that a link between the truth concealed by misstatements and truth revealed was "severed" as they must do by a preponderance of the evidence. Defendants' challenge amounts to nothing more than a recycled loss causation argument inappropriate for resolution at class certification. *See Wells Fargo*, 2025 WL 1243818, at *8.

*Plaintiffs' Damages Methodology Will Be Applied Classwide*. Defendants next question whether Dr. Cain's damages methodology can calculate classwide damages. It can. Dr. Cain's out-of-pocket methodology, coupled with an event study and inflation ribbon, is "the standard method for calculating damages in virtually every Section 10(b) class action." *Id.* at *8. Controlling Ninth Circuit authority (which Defendants notably omit) and rulings nationwide confirm the methodology's adequacy for class certification. *See, e.g.*, *AMI v. Alphabet Inc.*, 2026 WL 1382950, at *6 (N.D. Cal. May 18, 2026) (rejecting *Comcast* challenge and quoting in support *Lytle v. Nutramax Lab'ys., Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024)); P.Ex. 1 (listing 121 post-*Comcast* opinions rejecting challenges to damages methodologies in securities cases). Defendants' challenges echo those this Court previously rejected: "setting up their own hypotheticals and then triumphantly knocking them down" and raising "loss causation arguments dressed as *Comcast* arguments [that] are premature and not a bar to class certification." *Wells Fargo*, 2025 WL 1243818, at *8.

## II.    PROCEDURAL HISTORY

This Court denied Defendants' Motion to Dismiss in its entirety on March 23, 2026. With only five months for fact discovery (*see* ECF 101), Plaintiffs promptly served Requests for Production and Interrogatories on March 27, 2026, and eighteen third-party subpoenas shortly thereafter. At the time of filing, Defendants have produced only 428 documents, far fewer than the number produced by Plaintiffs and third parties. Moreover, because Plaintiffs' investigation and the SAC itself confirm the regular business use of text and instant messaging (*e.g.*, SAC ¶¶45-46, 328, 501, 504), Plaintiffs raised the need for these sources of data to be prioritized in every meet and confer and correspondence with Defendants since March 27. Yet Defendants have not provided any timeline for their production. While Plaintiffs are hopeful that the rate of production will increase dramatically in the coming days (and Defendants have represented that an additional production is forthcoming), Defendants have

consistently rejected a substantial completion date of June 15, 2026, a date Plaintiffs have stated is necessary to review documents and take fact depositions in advance of the August 31, 2026 fact discovery deadline, or any substantial completion date whatsoever. Given the pace of discovery, Plaintiffs reserve all rights to seek remedy from the Court, including imposition of a substantial completion date, so that it may be addressed on or before the July 7, 2026 hearing on the Motion.

## III.    ARGUMENT

### A.    Defendants Concede *Basic's* Presumption of Reliance, And Fail To Put Forth Any Evidence Proving The Absence Of Price Impact

Defendants concede that Plaintiffs have demonstrated market efficiency and that the rebuttable presumption of reliance applies. The only way to rebut this presumption is by proving by a preponderance of the evidence that Defendants' sustained misstatements had ***no*** price impact on Extreme's stock. Price impact can be observed ***either*** "on the 'front-end' (*i.e.*, misstatements causing or maintaining inflation) ***or*** on the 'back-end' (*i.e.*, a decline in price caused by the corrective disclosures)." *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *7 (N.D. Cal. Feb. 4, 2022); *In re NVIDIA Corp. Sec. Litig.*, 2026 WL 821418, at *10 (N.D. Cal. Mar. 25, 2026). Courts consistently reject attempts to prove an absence of price impact where, as here, "[the company's] stock price experienced statistically significant price increases on . . . days on which Defendants . . . made misstatements and/or omissions, and . . . experienced a statistically significant price decrease on every one of the [dates on which] Defendants are alleged to have made corrective disclosures." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016).

Rebuffing a "price impact" challenge at class certification "should impose no heavy toll on securities-fraud plaintiffs with tenable claims." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014). Indeed, it is Defendants who "bear[] the burden of proving a lack of price impact by a preponderance of the evidence," *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *5 (D. Nev. Mar. 1, 2023); *accord Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021), which requires more than merely "challeng[ing] Plaintiff on the persuasiveness of its own price impact claim," *Apple*, 2022 WL 354785, at *10. "The relevant inquiry is ***whether Defendants have proven a complete lack of price impact during the Class Period***, not whether the stock price decline

following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *Homyk v. Chemocentryx*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6, 2024). Defendants must affirmatively show a complete "sever[ance of] the link between the [alleged] misrepresentation[s] and the corrective disclosures." *Cooper v. Thoratec Corp.*, 2018 WL 2117337, at *5 (N.D. Cal. May 5, 2018). As this Circuit recently confirmed in a case Defendants notably do not cite, their burden requires showing "that the alleged misrepresentation did not actually affect the market price of the stock." *Jaeger v. Zillow Grp., Inc.*, 2025 WL 2741642, at *1 (9th Cir. Sept. 26, 2025). They plainly have not done so.

### 1.    Defendants Provide <u>No</u> Expert Evidence On Price Impact

Dr. Smith offers ***no opinion*** on price impact. ECF 146-28 ("Smith Rpt.") ¶5 (opinion limited to damages methodology); P.Ex. 3 ("Smith Tr.") 62:15-19 (confirming Dr. Smith "wasn't asked to conduct a price [*sic* impact] analysis" and "do[es]n't have an opinion [] from an economics perspective of whether or not there was price impact in this case"). Dr. Smith thus provides no evidence of the absence of price impact, and Defendants' reliance on his report for their price impact challenge (DB 13-16 (citing Smith Rpt. ¶¶22, 48, 50-53, 55-56, 70, 74, 79, 94)) should be disregarded. Dr. Smith actually agrees there were statistically significant decreases in Extreme's stock price following the corrective disclosures, defeating Defendants' claims. Smith Tr. 75:7-77:10; *see Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *12 (D. Conn. Apr. 13, 2023) (no rebuttal of reliance where unable to "prove[] a ***complete*** lack of price impact during the Class Period").

### 2.    Defendants Concede Front-End Price Impact

Defendants do not challenge direct front-end price impact for any of the 54 sustained misstatements. DB 11-16 (addressing only back-end price impact); Smith Tr. 329:13-16. Thus, Defendants have failed to "sever" the link between the misstatements and stock price movement, and the inquiry should end here. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *3 (S.D.N.Y. Mar. 23, 2020) ("[W]hen Plaintiffs are able to show an alleged misrepresentation had a statistically significant front-end price impact, Defendants are not entitled to rely on [] additional back-end arguments to rebut the *Basic* presumption."). Indeed, Dr. Cain's event study demonstrates

statistically significant stock price increases following Defendants' misstatements, including on July 27, 2022 (the first day of the Class Period), October 27, 2022, May 17, 2023, and August 2, 2023. P.Ex 2 ("Cain RR") ¶¶79-95.[2] Defendants' silence effectively concedes front-end price impact.

### 3. Defendants' Back-End Price Impact Arguments Fail, And Defendants Cannot Prove Its Absence By A Preponderance of The Evidence

Defendants' back-end price impact challenge cannot defeat certification. Undeterred, and without evidence, Defendants argue that "there is no back-end price impact—and thus no presumption of reliance—for any of the alleged misstatements because none of the five alleged corrective disclosures actually corrected Plaintiffs' theory of falsity for the growth and demand or backlog statements." DB 13. This rests on their mistaken theory that the corrective disclosures must reveal and admit to the alleged channel-stuffing scheme itself, rather than the concealed truth concerning Extreme's actual, organic product demand and firm backlog. *Id.* 13, 15. This is a loss causation challenge and is easily rejected at this stage. *See, e.g.*, *Wells Fargo*, 2025 WL 1243818, at *8; *Apple*, 2022 WL 354785, at *8 ("[T]he district court must use the evidence to decide the price impact issue while resisting the temptation to draw what may be obvious inferences for the closely related issues that must be left for the merits."); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 225 (C.D. Cal. 2019) (price impact arguments "generally reserved for the merits stage"). Indeed, it is the same argument already rejected by this Court. *Compare* ECF 104 at 24-25 *with* DB 13-16; *see Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, 2026 WL 817221, at *15 (N.D. Cal. Mar. 23, 2026) (citing authority stating "loss causation is sufficiently demonstrated through inventory corrections and revenue decline . . . even though the illicit scheme was not known at the time").

Under the lightest scrutiny, Defendants' argument collapses. The inquiry here is not whether there is loss causation, but whether Defendants have shown the absence of price impact by a preponderance of the evidence, and they have not. Defendants contend that there is no back-end price impact and the misrepresentations do not "match" the disclosures because they did not expressly reveal Defendants' "channel stuffing scheme or link the revenue declines to the collapse of the alleged

---

[2] For misstatements with no statistically significant stock price movement, the inflation maintenance theory provides that a misstatement can "cause[] a stock price to *remain* inflated by preventing preexisting inflation from dissipating from the stock price." *Goldman*, 594 U.S. at 119-20.

scheme" or state "that backlog orders were not as firm and noncancellable as Defendants allegedly represented at the time." DB 13, 15. Defendants' mischaracterization of the disclosures and their insistence on "mirror-image" correctives are not affirmative evidence of an absence of price impact, do not sever the link between Defendants' misrepresentations and the subsequent stock price declines, and rest on a clear misstatement of Ninth Circuit law. In this Circuit, at class certification, "the truth [becomes] known" when a disclosure "reveal[s] true facts concealed" by a misrepresentation, *Zillow*, 2025 WL 2741642, at *1, and "[t]here is no requirement that the disclosure take a particular form or be of a particular quality, such that it be a mirror image tantamount to a confession of fraud." *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *14 (C.D. Cal. July 17, 2024); *see also Alphabet*, 2026 WL 1382950, at *6 ("[A]n event can be corrective when it merely discloses a consequence of concealed information (for example, an earnings miss), even if the connection between the cause and the consequence is not made explicitly in the disclosure"); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) ("[A] corrective disclosure need not be a mirror image disclosure—a direct admission that a previous statement is untrue."). Here, each disclosure reveals facts concealed by Defendants' misrepresentations and scheme; there are no mismatches. *See Extreme Networks*, 2026 WL 817221, at *15. *See also* SAC ¶¶351-81, 618; Cain RR ¶¶15, 96-147.

Defendants reference six selectively quoted analyst reports to argue that some—not all—of the stock price declines following certain corrective disclosures were attributable to broader industry or macroeconomic factors. DB 5-6, 14. Such cherry-picked language cannot prove the absence of price impact. *See Waggoner v. Barclays*, 875 F.3d 79, 105 (2d Cir. 2017) ("[M]erely suggesting that another factor also contributed to an impact on a security's price does not establish that the fraudulent conduct complained of did not also impact the price of the security."); *Apple*, 2022 WL 354785, at *10 ("Claims that other factors also contributed in part to the price drop are insufficient to rebut the *Basic* presumption."); *cf. Extreme Networks*, 2026 WL 817221, at *15 ("[C]hanging market conditions or other unrelated factors would not prevent Plaintiffs from proving loss causation with respect to these disclosures."). This argument also fails because several analysts directly attributed declines to Defendants' revelations of the previously misstated information. Cain RR ¶¶118-42.

Defendants' expert, Dr. Smith, not only provides no opinion on back-end price impact, let alone price impact at all, (Smith Tr. 62:6-19, 123:10-22, 125:17-126:4), but he conceded under oath it is possible "the alleged fraud caused some of [the] drop in backlog . . . and stock price reaction" from the disclosures. *Id.* 264:11-21; *see also id.* 269:5-15 (testifying that "there is a story in which, under the alleged fraud that's being put forth by plaintiffs, that there could be increased inventory at the distributor level due to [the] alleged fraud . . . channel stuffing"). Dr. Smith further testified that his view of Extreme's industry was incomplete and self-selected, the industry background section of his report was not expertized, he is ***not*** opining industry issues entirely account for the stock price declines, and certain of the analyst reports are consistent with Plaintiffs' allegations. *Id.* 136:17-139:16, 142:20-23, 145:7-146:3, 254:16-255:18, 264:11-265:3. Regardless, Defendants' and Dr. Smith's select reading of analyst language does not prove a lack of price impact.

*In re Enovix Corp. Sec. Litig.*, 2026 WL 1078569 (N.D. Cal. Apr. 21, 2026), cited repeatedly by Defendants, bears no resemblance to the facts alleged here. As that court underscored, there was one revelation of the truth, which plaintiffs did not allege as a corrective disclosure, that "closely matche[d]" the allegedly false and misleading statement, but "the stock price actually increased" when the news was revealed. *Id.* at *12. And the pleaded corrective disclosures said nothing about the issues allegedly misrepresented or concealed. *Id.* at *11-13. Here, by contrast, "the five disclosures revealed the truth concealed by Defendants' alleged misstatements and caused sequential stock drops." *Extreme Networks*, 2026 WL 817221, at *15. And unlike the *Enovix* defendant, who offered expert testimony on the issue, Dr. Smith offers no opinion here. *Enovix*, 2026 WL 1078569, at *13.[3]

Defendants' Opposition boils down to nothing more than scattered criticism of Dr. Cain, a strategy that cannot satisfy their affirmative and heavy burden. *See, e.g.*, *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at *14 (E.D. Pa. Aug. 4, 2016) ("Defendants have failed to rebut the *Basic* presumption with direct evidence. They did not include their own event study and instead have simply tried to attack Plaintiff's expert."); *In re Celgene Corp. Sec. Litig.*,

---

[3] The only other case cited by Defendants in support of purported statement "mismatch" is *Gambrill v. CS Disco, Inc.*, an unadopted, out-of-circuit report and recommendation where the court recommended that some misstatements were either too "generic" or "quite different" from the corrective disclosure. 2025 WL 3771433 (W.D. Tex. Dec. 16, 2025).

2020 WL 8870665, at *12 (D.N.J. Nov. 29, 2020) ("Defendants merely attack Plaintiff's expert report. This is insufficient to rebut the *Basic* presumption as a defendant bears the burden to prove a lack of price impact through *direct evidence*."); *Pirnik v. Fiat Chrysler Autos. N.V.*, 327 F.R.D. 38, 45 (S.D.N.Y. 2018) (criticism of plaintiffs' expert "alone would arguably support rejection of Defendants' arguments at this stage of the proceedings").

Defendants' truth-on-the-market arguments (DB 15-16) also fail, as they did at the motion to dismiss stage: the "truth" about backlog cancellation risk was not disclosed before the corrective disclosures. "[A] truth-on-the-market defense requires information to be available with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression." *Alphabet*, 2026 WL 1382950, at *5 (citing *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)). Given the fact-intensive nature of this inquiry, "[a]ny inquiry as to precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits[.]" *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 583 (N.D. Cal. 2021); *see also Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *6 (N.D. Cal. Sept. 27, 2024) (similar). As Plaintiffs alleged, the market could not have "understood that backlog orders carried cancellation risk," DB 15, when Defendants repeatedly represented throughout the Class Period that the backlog was, *e.g.*, "firm" and "not cancelable." SAC ¶¶72, 458, 464. Nor is it accurate that "the only new information [disclosed] was that the pace of backlog reduction was steeper than Extreme anticipated," DB 16, an assertion that ignores that the backlog was cut by roughly half with no corresponding increase in revenue. SAC ¶¶18, 86, 351-60; *Extreme Networks*, 2026 WL 817221, at *10 (finding that the SAC alleges an "imminent risk that Extreme's backlog would evaporate" and a "heightened, severe risk of backlog cancellations known to Defendants at the time of their statements").[4]

---

[4] Plaintiffs do not merely allege that Defendants understated the degree of backlog cancellation risk at "particular moments in time," DB 15; Defendants misrepresented that the backlog, at all relevant times, reflected strong, organic customer demand and a firm, reliable source of future revenue growth, when it did not. *See Apple*, 2022 WL 354785, at *9 (rejecting contention that disclosures could not have revealed the fraud where the "magnitude and severity" of Apple's deteriorating performance was not yet known when challenged statement was made, and explaining that the complaint alleged "not merely that [Apple] misrepresented how poorly Apple was performing [], but that it was, in fact, performing poorly at all").

### 4. The *Basic* Presumption Applies to Scheme Liability Claims, As Does, In The Alternative, *Affiliated Ute*

Defendants do not dispute that the *Basic* presumption of reliance applies to Plaintiffs' scheme and misstatement claims. Nor could they, because "[t]he Supreme Court has applied the fraud-on-the-market presumption to scheme liability, so long as deceptive acts were disclosed to the investing public," as they were here through a series of misstatements. *Pampena v. Musk*, 2026 WL 539336, at *3 (N.D. Cal. Feb. 26, 2026) ("*Pampena v. Musk*"). Courts apply the *Basic* presumption of reliance to cases involving both scheme and misstatement claims. *See, e.g.*, *In re FirstEnergy Corp. Sec. Litig.*, 2026 WL 1179398, at *9 (S.D. Ohio Apr. 30, 2026); *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 2026 WL 878962, at *6 (S.D.N.Y. Mar. 31, 2026) ("*OK Fire v. Musk*"); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 282 (N.D. Ala. 2009). In the alternative, the *Affiliated Ute* presumption also applies to scheme claims based on concealed deceptive conduct. *See OK Fire v. Musk*, 2026 WL 878962, at *6. Defendants argue that *Affiliated Ute* is unavailable because Plaintiffs' theory of liability is not "primarily" omission based. DB 16-17. However, Plaintiffs' allegations involve concealed deceptive acts—such as the decision to "blow up FIFO" backlog prioritization and the directive to "get creative" and pull in distributor orders. *E.g.*, SAC ¶¶95, 213. Regardless, this Court need not address *Affiliated Ute* where the *Basic* presumption applies. *See OK Fire v. Musk*, 2026 WL 878962, at *6 (finding both presumptions apply but noting that "because the *Basic* presumption clearly applies," deciding whether *Affiliated Ute* applies to the scheme claim "is unnecessary").

### B. Damages Are Measurable On A Classwide Basis

Class certification requires a "showing that damages could be calculated on a classwide basis, even where such calculations have not yet been performed." *Lytle*, 114 F.4th at 1025; *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Drake v. Bayer Healthcare LLC*, 2026 WL 1079027, at *2 (9th Cir. Apr. 21, 2026); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017). Plaintiffs have affirmatively presented such a methodology. ECF 140-2 ("Cain Rpt.") ¶¶97-114; Cain RR ¶¶32-36. Defendants' challenges speculate that "plaintiffs' damages model won't be up to snuff for anyone[, but] [i]n all but the rare case, that's an argument for summary judgment, not class certification." *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 349 F.R.D. 606, 611 (S.D.N.Y. 2025).

### 1.    Plaintiffs' Universally Accepted Standard For Measuring Classwide Damages Is Capable Of Addressing Changes In Artificial Inflation

Per-share damages for all Class members are readily calculable using the "out-of-pocket" methodology. Cain Rpt. ¶¶97-114; Cain RR ¶¶21-22. *See also Alphabet*, 2026 WL 1382950, at *6 (out-of-pocket methodology is the "standard measurement of damages in Section 10(b) securities cases"); *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (used in "virtually every §10(b) class action"); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 479 (S.D.N.Y. 2025) ("endorsed repeatedly by courts" as "consistent with *Comcast*"). Even Defendants' expert agrees that the out-of-pocket methodology is the most common method for calculating economic damages in a Rule 10b-5 matter and confirmed that he is "not testifying that [] an out-of-pocket method for calculating damages would not be an acceptable way of reporting estimated damages." Smith Tr. 83:19-24, 92:20-93:2.

Nonetheless, Defendants suggest something more is required. They are wrong. As Dr. Cain explains, Defendants' criticisms "do not concern my ability to use the out-of-pocket methodology— which Dr. Smith agrees is common and does not opine could not be used here—but at most criticize only my descriptions of the tools I will use to measure artificial inflation. These criticisms are unsupported, irrelevant, and without economic foundation." Cain RR ¶36; *see generally id.* ¶¶32-36.

Defendants and Dr. Smith stress similarities between the damages methodologies across Dr. Cain's opinions (DB 9; Smith Rpt. ¶¶33-35), but this is not the defect they seem to think; rather, the consistency of an expert's accepted methodology across cases is precisely what should occur. *See Wells Fargo*, 2025 WL 1243818, at *8 (dismissing argument that "Plaintiffs' expert could copy and paste the entirety of his expert report in every securities fraud case and meet the predominance requirement"); *see also, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, 2026 WL 734721, at *12-15 (N.D. Ill. Mar. 16, 2026) (acceptance of expert's consistent methodology in "numerous cases" supports certification). Defendants' suggestion that other circuits may review whether unexecuted damages methodologies satisfy *Comcast* (DB 23 n.1) changes nothing: other defendants' pending Rule 23(f) petitions are not holdings, bind nothing in this Circuit, and cannot displace controlling Ninth Circuit authority in *Lytle* and *Drake* permitting reliance on a reliable, not-yet-executed model.

### 2. The Damages Methodology Applies Equally To Plaintiffs' Claims, And Can Address Any Potential Adjustments To Artificial Inflation

Dr. Cain's methodology appropriately encompasses Plaintiffs' misstatements and scheme claims. Cain Rpt. ¶¶97-114; Cain RR ¶¶37-59. Nonetheless, Defendants urge this Court to require two distinct damages models for both Section 10(b) claims, contending that using the out-of-pocket methodology to measure classwide damages for both Rule 10b-5(b) misstatement and Rule 10b-5(a) & (c) claims "defies *Comcast*" (DB 23) because, according to Defendants, the two claims rest on "non-overlapping sets of alleged misconduct" and "distinct timelines." Smith Rpt. ¶¶10-11. *See generally* DB 19-23. But this premise *directly* contradicts what Defendants have repeatedly told the Court previously: that the scheme claim is *not* "separate from the alleged practices underlying [Plaintiffs'] Rule 10b5-(b) [misstatement] claim," that all "key events" supporting the scheme claim were identical to those used to "allege that Defendants' statements were false and misleading," and that Plaintiffs do not "differentiate the conduct underlying their scheme liability claim" from the misstatement claim. ECF 104 at 25; ECF 110 at 15. In turn, the Court itself acknowledged the overlap in sustaining the scheme liability claim "for the same reasons" as the misstatements claim, as both hinged on "Defendants' effort to inflate revenue and backlog by concealing manipulative sales practices." *Extreme Networks*, 2026 WL 817221, at *9, 15. The Court's reasoning accords with other rulings finding that "considerable overlap exists among the subsections of Rule 10b-5," *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021), and "the same set of facts may give rise both to a violation of subsection (b) and subsections (a) and/or (c)," *S.E.C. v. Loomis*, 969 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013); *see also York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*, 738 F. Supp. 3d 1182, 1217 (N.D. Cal. 2024) (sustaining channel stuffing claims premised on same facts). Given the considerable overlap between both claims, Defendants' speculative suggestion that there must be (or even *could* be) entirely separate damages methodologies lacks merit.

Likewise, Dr. Cain rejects Defendants' and Dr. Smith's argument that he must separately identify a methodology for calculating inflation under each claim. Dr. Cain explains that this critique, premised on faulty assertions that the alleged scheme began before the Class Period and that the two claims are on "distinct timelines," goes at most to case-specific adjustments to the calculation of

artificial inflation, which is an input to the damages measure and not synonymous with damages itself, and is therefore an answerable common question for the loss causation and damages stage. Cain RR ¶¶37-41.[5] As Dr. Cain emphasizes, Dr. Smith provides no foundation for requiring this input to be specified and does not contend that the out-of-pocket methodology could not be applied consistently to all Class members. *Id.* ¶41. Additionally, in any event, Dr. Smith's criticism is inconsistent with Plaintiffs' allegations, because, as discussed above, the SAC alleges that the misrepresentations and the scheme were part of the same two-pronged initiative to defraud investors about the source and sustainability of Extreme's revenue, with the misrepresentations regarding the firmness of the backlog pleaded as an element of the scheme, and that both forms of conduct resulted in artificial inflation dissipated through the same corrective events. *Id.* ¶¶41-47.

Thus, as Dr. Cain explains, the out-of-pocket methodology encompasses both the misstatement-based and scheme-based theories using the same formula, with any differences between the theories reflected only in the calculated inputs rather than in the methodology itself. *Id.* ¶¶48-49. Indeed, the methodology is designed precisely to accommodate the findings of fact a jury may reach: if both theories produce liability, it measures inflation attributable to both, and if only one survives, the same methodology calculates damages attributable to the surviving theory, with any inflation tied to the dismissed theory disaggregated if necessary using the tools described in his Opening Report (which Dr. Smith conceded could be "helpful"). *Id.* ¶¶47-48. In all cases, this analysis is performed uniformly and on a classwide basis. *Id.* Dr. Cain adds that even if there were some question about the precise start date for scheme-based versus misstatement-based liability, that question is readily incorporated into the methodology and does not disturb it. *Id.* ¶¶39-41. Whether the inflation from the two theories is partially overlapping, fully overlapping, or distinct, and whether and to what extent disaggregation is ultimately required, are merits questions for the loss causation and damages stage that do not undermine the reliability or classwide applicability of the out-of-pocket methodology at

---

[5] As Dr. Cain notes, Dr. Smith's statement that the scheme "intensified" in 2023 does not reflect the allegations of the SAC, but rests on one single line in one single paragraph reflecting one FE's personal experience with pressure to pull in sales. *See* SAC ¶198; Cain RR ¶37, n.76. Dr. Smith has no experience with scheme liability and did not read Dr. Cain's prior reports on the issue (Smith Tr. 170:2-16), raising credibility concerns with respect to this topic.

the class certification stage. *Id.* ¶47; *see generally id.* ¶¶47-59.[6]

Consistent with these reasons, other courts have likewise certified classes in cases asserting both misstatement and scheme liability claims, with damages measured through the out-of-pocket methodology. *See Pampena v. Musk*, 2026 WL 539336, at *2 (refusing to reopen class certification to address scheme liability separately from misstatements liability); *see also, e.g.*, *FirstEnergy*, 2026 WL 1179398, at *5, 14 (certifying class with scheme liability and misstatements claims); *OK Fire v. Musk*, 2026 WL 878962, at *6 (same); *Dentsply*, 349 F.R.D. at 610 (same). Notably, Defendants fail to identify a single decision denying class certification on the grounds that a plaintiff lacked a methodology capable of measuring damages in a case with both scheme and misstatement claims.[7]

### 3. The Out-Of-Pocket Methodology Is Capable Of Addressing Confounding Information, Industrywide Trends, And The Alternative Materialization Of The Risk Theory of Liability At The Merits Stage

The remainder of Defendants' Opposition concerns Dr. Cain's model's ability to account for confounding information, industrywide trends, and materialization of the risk. These all relate to fact-intensive loss causation issues that the model and methodology behind it are perfectly capable of addressing at the appropriate time. *See* Cain RR §§IV.C, IV.D. This Court has rejected these exact critiques in *Wells Fargo*—and the Ninth Circuit rejected attempts to raise them on appeal—identifying that "Defendants' loss causation arguments dressed as *Comcast* arguments are premature

[6] Defendants misleadingly suggest that the *In re Vaxart, Inc. Securities Litigation*, 738 F. Supp. 3d 1259 (N.D. Cal. 2024) court "reject[ed] Dr. Cain's proposed class damages model for failure to adequately measure timing of alleged inflation dissipation." DB 22. That is wrong: the *Vaxart* court ultimately certified the class and accepted Dr. Cain's out-of-pocket methodology, holding that the defendants' timing-of-dissipation argument was "an argument that the plaintiffs have failed to establish loss causation, and plaintiffs do not need to prove loss causation at the class certification stage." *Vaxart*, 759 F. Supp. 3d at 1017 ("[I]f the jury finds that some or all [] price declines were not the result of corrective disclosures or leakage of the truth, that finding can be factored into the damages calculation" and "resolved . . . on a class-wide basis."). The precise question Defendants say defeats certification—how much inflation dissipated on each corrective date and when—is therefore a merits question that the out-of-pocket methodology accommodates uniformly across the Class.

[7] Defendants' citation to a motion to compel discovery decision in *Pampena v. Musk* (DB 18) is quizzical given that the *Pampena* court certified both scheme and misstatements claims. Moreover, the court specifically noted the complete overlap between scheme and misstatement claims by allowing plaintiffs to use the same reasons for falsity in separate interrogatories. 2025 WL 2224423, at *11 (N.D. Cal. Aug. 5, 2025). In *In re AGS, Inc. Securities Litigation*, the court acknowledged that scheme and misstatement claims *could* be separate but held that "if defendants commit fraud as part of a scheme, they may be liable under *both* types of claims" if "[t]he same set of alleged facts form the basis of fraud under both theories of liability." 2024 WL 581124, at *5 (D. Nev. Feb. 12, 2024).

and not a bar to class certification." *Wells Fargo*, 2025 WL 1243818, at *8. The same applies here.

Dr. Cain first disposes of Defendants' assertion that his methodology "cannot differentiate fraud-related stock price declines from those caused by confounding industrywide developments" by identifying this contention as speculative and noting that Dr. Smith provides no economic evidence that confounding information in fact impacted Extreme's stock price movements on any of the five alleged disclosure dates. Cain RR ¶¶60-64. While Dr. Smith points to purported industrywide factors such as "supply chain normalization and macro-driven softness," he conceded under oath that he is not opining that industry issues accounted entirely for stock price declines or that there is no way to control for such effects. *Id.* In any event, Dr. Cain explains that his event study methodology is specifically designed to control for market and industry changes, *id.* ¶¶62-65; addressing potential confounding information is standard practice in economic analysis at the loss causation and damages stage, with the aid of many well-accepted valuation techniques for disaggregating such information, all of which can be performed on a classwide basis, *id.* ¶62; and Dr. Smith, under oath, agreed that the tools Dr. Cain identified could be used to measure artificial inflation, *id.* ¶¶60-61, n.112-13.[8] Courts widely agree with Dr. Cain that the out-of-pocket methodology "is perfectly capable of dealing with, and is routinely used to, address issues relating to confounding information in calculating damages on a class-wide basis." *Id.* ¶66; *see, e.g.*, *Mulderrig.*, 340 F.R.D. at 588 (adjusting for "confounding factors . . . is an inquiry to consider at the merits stage"); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *9 (S.D. Cal. Aug. 24, 2021) (same).[9]

Dr. Cain also addresses Defendants' assertion that his methodology cannot account for Plaintiffs' alternative materialization of risk theory of loss causation. Cain RR. ¶¶67-75. Defendants' argument rests on an improper truth-on-the-market argument that the Company had meaningfully

---

[8] Dr. Cain demonstrates that if at the loss causation stage, some percentage of a decline was found to be due to confounding factors, the resulting artificial inflation "can easily be updated and incorporated into the out-of-pocket methodology" on a classwide basis. Cain RR ¶65.

[9] Dr. Cain disposes of Dr. Smith's concerns about the constant dollar and constant percentage approaches as "entirely unfounded," explaining that courts have accepted his use of both methodologies to account for changes in inflation during a class period, and that Dr. Smith raises no individualized issues because the choice among constant dollar, constant percentage, or other methods relates only to the inputs to the out-of-pocket methodology. Cain RR ¶¶58-59; *see Wells Fargo*, 2025 WL 124818, at *8 (rejecting similar arguments about inflation approaches).

REPLY IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVES, AND APPOINT CLASS COUNSEL - CASE NO.: 3:24-CV-05102-TLT

14

disclosed the risk of backlog cancellations such that "the market would have already priced in some probability that some cancellations would occur," and therefore any methodology must be able to account for this already partially disclosed risk. DB 25; Cain RR ¶¶67-68. In support, Defendants cite Dr. Smith's view that that a stock price decline would overstate damages in entirely hypothetical circumstances involving a known 1% expected cancellation rate, a concealed 10% true rate, and a realized 40% cancellation outcome. DB 25; Smith Rpt. 97-100. To be clear, this hypothetical is entirely of Dr. Smith's creation and not specific to the facts or allegations here. In any event, Dr. Cain explains how his out-of-pocket methodology is applicable and reliable even in that purely hypothetical scenario, because a loss causation and damages analysis would conclude what portion of the price decline was due to confounding factors and would disaggregate accordingly, with the resulting artificial inflation easily updated and incorporated into the methodology. Cain RR ¶¶68-75. Dr. Cain further confirms that he would address corrective disclosures and materializations of risk in the same manner, and that he is able to calculate damages under a materialization of risk theory. *Id.*

Dr. Smith's speculative concerns relate at most to the measurement of an ***input*** to the damages calculation—the amount of inflation dissipated from the corrective disclosures—and do not disturb the use of the out-of-pocket methodology. *Id.* ¶68. As Dr. Cain explains, answering these questions requires a merits-based loss causation and damages analysis after a full record, and such issues are routinely the subject of expert discovery during the merits phase and in any event are common to all Class members. *Id.* ¶¶69, 73, 75; *see Junge v. Geron Corp.*, 2022 WL 1002446, at *8 (N.D. Cal. Apr. 2, 2022) ("Materialization of the risk articulates a loss causation theory. . . . The possible existence of such a theory does not contravene *Comcast* or defeat predominance.").

## IV.    CONCLUSION

"[T]he purpose of class certification is merely to select the method best suited to adjudication of the controversy fairly and efficiently." *Lytle*, 114 F.4th at 1026. Plaintiffs respectfully request that the Court find that this case is best suited for classwide adjudication and grant the Motion.

DATED: June 5, 2026                           Respectfully submitted,

                                              **LABATON KELLER SUCHAROW LLP**

                                              */s/ Lauren A. Ormsbee*
                                              Lauren A. Ormsbee (*pro hac vice*)
                                              Jesse L. Jensen (*pro hac vice*)
                                              Danielle S. Lazarus (*pro hac vice*)
                                              Alexandra E. Forgione (*pro hac vice*)
                                              Jacqueline E. Lacovara (*pro hac vice*)
                                              140 Broadway
                                              New York, NY 10005
                                              Tel: (212) 907-0700
                                              Fax: (212) 818-0477
                                              lormsbee@labaton.com
                                              jjensen@labaton.com
                                              dlazarus@labaton.com
                                              aforgione@labaton.com
                                              jlacovara@labaton.com

                                              *Counsel for Lead Plaintiffs and*
                                              *Lead Counsel for the Class*

                                              **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                              Lucas E. Gilmore (Bar No. 250893)
                                              Reed R. Kathrein (Bar. No. 139304)
                                              715 Hearst Avenue, Suite 300
                                              Berkeley, CA 94710
                                              Tel: (510) 725-3000
                                              Fax: (510) 725-3001
                                              lucasg@hbsslaw.com
                                              reed@hbsslaw.com

                                              *Liaison Counsel for the Class*

                                              **VANOVERBEKE MICHAUD & TIMMONY P.C.**
                                              Aaron L. Castle (*pro hac vice*)
                                              79 Alfred Street
                                              Detriot, MI 48201
                                              Tel: (313) 578-1200
                                              Fax: (313) 578-1201
                                              acastle@vmtlaw.com

                                              *Additional Counsel for Oakland County Voluntary*
                                              *Employees' Beneficiary and Oakland County*
                                              *Employees' Retirement System*