LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Morgan E. Whitworth (Bar No. 304907)
 morgan.whitworth@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Daniel R. Gherardi (Bar No. 317771)
 daniel.gherardi@lw.com
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
Telephone: +1.650.328.4600

*Attorneys for Defendants Extreme
Networks, Inc., Edward B. Meyercord III,
Rémi Thomas, Cristina Tate, Kevin
Rhodes, Norman Rice, and Jonas Brown*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXTREME NETWORKS, INC., EDWARD B. MEYERCORD III, RÉMI THOMAS, CRISTINA TATE, KEVIN RHODES, NORMAN RICE, JONAS BROWN<br><br>Defendants. | Case No. 3:24-cv-05102-TLT<br><br>**DEFENDANTS' RESPONSES TO THE COURT'S SUPPLEMENTAL QUESTIONS REGARDING THE CLASS CERTIFICATION HEARING**<br><br>Judge:   Hon.  Trina L. Thompson |

Defendants Extreme Networks, Inc., Edward B. Meyercord III, Rémi Thomas, Cristina Tate, Kevin Rhodes, Norman Rice, and Jonas Brown ("Defendants") respectfully submit the following responses to the Court's Supplemental Questions for the Hearing (Dkt. 155) regarding Lead Plaintiffs' Motion for Certify Class, Appoint Class Representatives, and Appoint Class Counsel (Dkt. 140).

## I. NARROWING ISSUES

**Question**:  Defendants in their Opposition state "Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance requirement for two reasons."  ECF 146 at 16.  Plaintiffs in their reply state, "Defendants concede that Plaintiffs satisfy five of Rule 23's six requirements: numerosity, commonality, typicality, adequacy, and superiority, and that common issues of liability related to falsity, materiality, scienter, and loss causation predominate."  ECF 152 at 6.

Please confirm whether the parties direct the Court to focus solely on 'predominance' (whether "questions of law or fact common to class members predominate over any questions affecting only individual members") under Rule 23(b)(3).

**Defendants' Response**:  Defendants confirm that the Court need only focus on the "predominance" requirement of Rule 23(b)(3).  Here, common issues of liability ***do not*** predominate for two independent reasons: both reliance and damages present individual issues that will overwhelm any common issues.

Individual issues of reliance predominate because Defendants have rebutted the *Basic* presumption of reliance; Plaintiffs cannot show that the challenged statements had an actionable price impact given the complete mismatch between the challenged statements and the purportedly "corrective" disclosures.  *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113 (2021).  To be clear, there was never a restatement, SEC investigation, or any other disclosure that Defendants engaged in "channel stuffing" or misrepresented the nature of the backlog (because they didn't).

And Plaintiffs have not met their burden to show that damages can be resolved through common evidence as to their scheme theory as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because their expert simply recycled his opinion from their misrepresentation theory

despite Plaintiffs' repeated insistence that their scheme and misrepresentation theories are different.  *See* Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF 81) at 25 ("Moreover, Defendants also participated in deceptive acts beyond their misrepresentations."); Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint (ECF 109) at 4 (scheme and misstatement claims require different elements of proof); Mar. 3, 2026 Transcript for Hearing on Motion to Dismiss the Second Amended Complaint, 38:19-39:7 (plaintiffs arguing that there are "separate deceptive acts").

## II.  BURDEN OF PROOF

**Question**:  Before it can certify a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" of Federal Rule of Civil Procedure 23 have been satisfied.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  Plaintiffs "must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23" which includes "the predominance requirement of Rule 23(b)(3)."  ECF 146 at 16; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

In terms of price impact analysis, "[D]efendant bears the burden of persuasion to prove a lack of price impact [and] must carry that burden by a preponderance of the evidence."  *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021).  That is, defendant's burden requires showing "that the alleged misrepresentation did not actually affect the market price of the stock."  *Jaeger v. Zillow Grp., Inc.*, 2025 WL 2741642, at *1 (9th Cir. Sept. 26, 2025).  "Loss causation, on the other hand, is a merits concept similar to proximate cause, which requires the plaintiff to show that the alleged misrepresentations caused the price of the stock the plaintiff purchased to become inflated, and that the inflation caused economic loss when the statements were revealed as false."  *Id.* (citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020)).

Given these standards, please clarify how the Court should balance Plaintiffs' burden on

the predominance requirement against Defendants' burden to establish price impact.

**Defendants' Response**:  Plaintiffs attempt to meet their burden to "actually *prove*—not simply plead—that their proposed class satisfies" the predominance requirement for the element of reliance by invoking the fraud-on-the-market presumption.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  Defendants do not dispute that Plaintiffs have properly invoked the presumption.  But Defendants can rebut that presumption "by showing that the alleged misrepresentation did not actually affect the stock's price—that is, the misrepresentation had no 'price impact.'"  *Id.* at 263-64.  In fact, although Defendants "bear[] the burden of persuasion" on lack of price impact, the Supreme Court recognized in *Goldman* that this "allocation of the burden is unlikely to make much difference on the ground" because "[t]he district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact."  *Goldman*, 594 U.S. at 126-27.  In so doing, courts "should be open to all probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense."  *Id.* at 122 (citation omitted).  For that reason, the overlap between price impact and loss causation does not diminish the need to conduct a full assessment of the evidence of price impact—and, in particular, an inquiry into whether "the information disclosed on the date of the corrective disclosure was [actually] corrective of one or more prior false statements."  *In re Enovix Corp. Sec. Litig.*, 2026 WL 1078569, at *8 (N.D. Cal. Apr. 21, 2026) (citation modified); *see also In re Apple Sec. Litig.*, 2022 WL 354785, *8 (N.D. Cal. Feb. 4, 2022).

Here, Defendants respectfully submit that the evidence—particularly when aided by common sense—shows that the alleged misstatements did not have a price impact because "there is a mismatch between the contents of the misrepresentation[s] and the corrective disclosure[s]." *Goldman*, 594 U.S. at 123.  Because such a mismatch exists, "it is less likely that the specific disclosure[s] actually corrected the generic misrepresentation[s], which means that there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop." *Id.*

Importantly, the price impact analysis is more rigorous than the loss causation analysis: courts have also recognized that "[a]voiding a 'mismatch' 'requires a closer fit (even if not precise)

between the front- and back-end statements than courts have required when analyzing the loss causation element of securities fraud." *In re NVIDIA Corp. Sec. Litig.*, 825 F. Supp. 3d 1047, 1072 (N.D. Cal. 2026) (quoting *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *6 (S.D.N.Y. Mar. 29, 2024)).  None of the corrective disclosures here even hints at any purported channel-stuffing or backlog-inflating schemes—again, though Plaintiffs have been making such accusations for nearly two years now, there has been no restatement, no SEC investigation, no revelation of such "schemes" of any kind.  When Extreme's stock price dropped, the market attributed it to the same industry-wide headwinds that its competitors were also suffering.  *See, e.g.*, ECF 146-5 at 1 (in reaction to November 1, 2023, disclosure, UBS explaining "softening is largely due to the macro with inventory destocking a contributing factor"); ECF 146-7 at 1 (Rosenblatt characterizing the January 8, 2024, lower revenue guidance as "not overly surprising, given the channel and inventory digestion Cisco (CSCO, Neutral) recently spoke about"); ECF 146-9 at 1 (in reaction to January 31, 2024, disclosure, Oppenheimer explaining: "We think it is a combination of above trend network upgrades the last few years, macro uncertainty and customers waiting for improved products/services . . . . This is not unique to [Extreme].").

Contrary to Plaintiffs' arguments, evidence of front-end price movement does not "end" the "inquiry" on Defendants' mismatch argument.  Plaintiffs' Reply (ECF 152) at 4.  Under a "mismatch" analysis, the causal link is missing where the subject matter of the challenged statements and corrective disclosures do not match, *regardless* of any stock price movement.  For example, in *Crews v. Rivian Automotive, Inc,* the court permitted the defendant to attack price impact via a "mismatch" analysis for back-end price impact without any analysis of front-end price impact.  2024 WL 3447988, at *13 n.8 (C.D. Cal. July 17, 2024).  The court explained that, as *Goldman* "makes clear, front-end and back-end price impact are linked; if a defendant disproves back-end price impact, it means that one can infer a lack of front-end impact as well because the alleged misrepresentations must not have been the cause of an artificially inflated stock price." *Id.* The court expressly rejected plaintiff's argument that "Defendants['] failure to analyze [ ] price increases is fatal to their price impact challenge" and noted that "[i]f Defendants convince the Court that there was no back-end price impact, it will be strong and persuasive evidence that there

was no price impact at all." *Id.* As explained in the Opposition, Defendants have met that burden here, and certification should be denied for the same reasons that it was denied in *In re Enovix Corp. Securities Litigation*: the corrective disclosures did not "[bring] to light" any of the information that was alleged to have made challenged statements misleading. Defendants' Opposition (ECF 146) at 13-15 (quoting *Enovix,* 2026 WL 1078569, at *12).

Finally, price impact is the only issue here for which Defendants bear the burden. Defendants also challenge the predominance requirement on another, independent basis—damages. On damages, "Rule 23(b)(3)'s predominance requirement [] requires the **moving party** to show that 'damages are capable of measurement on a classwide basis,'" which "requires plaintiffs to tie their method of proving damages to their theory of liability." *Loritz v. Exide Techs.*, 2015 WL 6790247, at *3 (C.D. Cal. July 21, 2025) (quoting *Comcast*, 569 U.S. at 34-35) (emphasis added). As explained in the Opposition, Plaintiffs have not satisfied this burden here. ECF 146 at 17-25. The failure is most acute with respect to their scheme liability claim because they fail to show how they can account for damages caused by that theory of liability, particularly when they have asserted that the scheme is distinct from the misrepresentation liability. This runs afoul of *Comcast*'s admonition that "a model purporting to serve as evidence of damages in [a] class action must measure *only* those damages attributable to that theory." *Comcast*, 569 U.S. at 35 (emphasis added). While it is true that courts in securities cases often accept a simplistic description of the out-of-pocket methodology, Plaintiffs have not identified a single case that applied the same out-of-pocket methodology to two distinct theories of liability, and thus the same boilerplate description is not sufficient to meet the *Comcast* requirement here.

Dated: July 6, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By  */s/ Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Morgan E. Whitworth (Bar No. 304907)
morgan.whitworth@lw.com

505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Daniel R. Gherardi (Bar No. 317771)
  daniel.gherardi@lw.com
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
Telephone: +1.650.328.4600

*Attorneys for Defendants Extreme
Networks, Inc., Edward B. Meyercord
III, Rémi Thomas, Cristina Tate, Kevin
Rhodes, Norman Rice, and Jonas Brown*