

**Lauren A. Ormsbee**
**Partner**
**Labaton Keller Sucharow LLP**
140 Broadway
New York, New York 10005
212.907.0864
LOrmsbee@labaton.com

VIA ECF & E-MAIL

July 6, 2026

Hon. Trina L. Thompson
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

RE:    *Steamfitters Local 449 Pension & Ret. Security Funds v. Extreme Networks, Inc., et al.*,
         No. 24-cv-5102-TLT

Dear Judge Thompson:

Plaintiffs respond to the Court's Supplemental Questions for the Hearing. ECF No. 155.

## I.    NARROWING ISSUES

In response to the Court's request for confirmation as to "whether the parties direct the Court to focus solely on 'predominance' . . . under Rule 23(b)(3)," the answer is yes. Plaintiffs demonstrated that the Class satisfies each element of Rule 23(a) and (b)(3) and should be certified. *See* Motion at 11-25.[1] Defendants do not challenge Plaintiffs' satisfaction of five of Rule 23's six requirements: Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, as well as Rule 23(b)'s superiority requirement. Defendants also do not dispute that common issues concerning the elements of falsity, materiality, scienter, and loss causation predominate, nor do they dispute that the market for Extreme common stock was efficient such that Plaintiffs and proposed Class members are entitled to a common and rebuttable presumption of reliance as provided for in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988) and *Halliburton Company v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014) ("*Halliburton II*"). *See* Opposition at 9 (conceding market efficiency for purposes of the Motion).

Therefore, the Court should focus only on a determination of whether individual issues of reliance and damages predominate over all other common issues to such an extent that class certification should be denied. In order for the Court to deny certification, Defendants must (1) rebut the presumptive reliance attributable to all proposed Class members by affirmatively proving a lack of "price impact"—i.e., Defendants must prove, by a preponderance of the evidence, that their alleged misstatements had no impact on Extreme's stock price, as guided by the Supreme

---

[1] The parties' submissions are referred to herein as: "Motion" (ECF No. 140); "Opposition" (ECF No. 146); "Reply" (ECF No. 152); "Cain Initial Report" (ECF No. 140-2); and "Cain Reply Report" (ECF No. 152-3).

 New York | Delaware | London | Washington, D.C.

LKS

July 6, 2026
Page 2

Court's decisions in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113 (2021) and *Halliburton II*; or (2) demonstrate that Dr. Cain's "out-of-pocket" damages methodology—which has been endorsed repeatedly by courts nationwide, including this Court, as an appropriate and reliable measure of damages under Section 10(b) of the Exchange Act—is nevertheless incapable of calculating classwide damages here. Defendants' challenges fail, and the Class should be certified.

**Reliance**: The *Basic* presumption of reliance is based on the well-founded principle that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283-84. With the *Basic* presumption, common issues of reliance predominate under Rule 23(b)(3) unless Defendants make an affirmative evidentiary showing that proves by a preponderance of the evidence that, regardless of the efficient market, none of Defendants' misstatements had any impact on the price of Extreme common stock. *Goldman*, 594 U.S. at 126. Defendants' burden is a heavy one and is not met here. As described below, in Plaintiffs' Reply and in Dr. Cain's Reply Report, Defendants fail to make any colorable evidentiary showing that none of their 54 misstatements impacted Extreme's stock price. Defendants' expert does not opine on price impact, and Defendants merely cherry pick text from a handful of analyst reports as "evidence" of a lack of price impact, while recycling arguments that failed at the motion to dismiss stage—the exact type of merits argument that courts throughout the Ninth Circuit, including this Court, rule as premature at the class certification stage. *See* Reply at 5-6; *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2025 WL 1243818, at *8 (N.D. Cal. Apr. 25, 2025) ("Defendants' loss causation arguments . . . are premature and not a bar to class certification."). Moreover, Defendants' claim that the five corrective disclosures do not exactly "match" their misstatements invokes a "mirror image" theory that has been rejected repeatedly by courts in this Circuit. *See* Reply at 5-6; *Jaeger v. Zillow Grp., Inc.*, 2025 WL 2741642, at *1 (9th Cir. Sept. 26, 2025); *see also Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *14 (C.D. Cal. July 17, 2024) ("There is no requirement that the disclosure take a particular form or be of a particular quality, such that it be a mirror image tantamount to a confession of fraud."); *AMI v. Alphabet Inc.*, 2026 WL 1382950, at *6 (N.D. Cal. May 18, 2026) ("[A]n event can be corrective 'when it merely discloses a consequence of concealed information (for example, an earnings miss), even if the connection between the cause and the consequence is not made explicitly in the disclosure'").

**Damages:** Plaintiffs' expert provided a well-established and universally accepted damages methodology and model, demonstrating that damages are capable of being calculated classwide such that common issues predominate. *See Wells Fargo*, 2025 WL 1243818, at *7. The Ninth Circuit, applying *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), has made clear that plaintiffs need show only that damages ***could*** be calculated on a classwide basis, not that Plaintiffs will successfully execute the damages methodology and model. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017); *see also* Reply at 9-10. This Court has noted that the out-of-pocket methodology is "the standard method for calculating damages in virtually every Section 10(b) class action." *Wells*



July 6, 2026
Page 3

*Fargo*, 2025 WL 1243818, at *8. Other courts unanimously agree, *see* ECF No. 152-2 (listing 121 post-*Comcast* opinions rejecting challenges to damages methodologies in securities cases), and Defendants' own expert concedes that Dr. Cain's methodology is the most common damages methodology used in Section 10(b) cases. *See* Reply at 10. At most, Defendants' criticisms challenge the calculated *inputs* to that methodology—matters reserved for the merits stage. Indeed, Dr. Cain thoroughly addressed Defendants' criticisms, and further opined how, even if meritorious, they could all be addressed through inputs to the model and applied on a classwide basis, thereby satisfying predominance. *See* Cain Reply Report §§IV.C, IV.D. Ultimately, whether Plaintiffs' damage calculation succeeds or fails at a later stage will apply uniformly to the whole Class.

## II.    BURDEN OF PROOF

The Court next asked the parties to "clarify how the Court should balance Plaintiffs' burden on the predominance requirement against Defendants' burden to establish price impact."[2]

**Plaintiffs' Burden**: It is Plaintiffs' burden to "show[] that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original). With respect to the Section 10(b) element that requires a showing of reliance on Defendants' misstatements and omissions when making an investment decision, the fraud-on-the-market presumption afforded by *Basic* "establishes that a plaintiff satisfies that burden by proving the prerequisites for invoking the presumption." *Halliburton II*, 573 U.S. at 276. There is no dispute that Plaintiffs have shown that Extreme stock traded in an efficient market sufficient to invoke the *Basic* presumption of reliance. *See* Motion at 16; Cain Initial Report, §§ IV-V; Opposition at 9. Plaintiffs have met their burden.

**Burden Shifting and Defendants' Burden**: The Court's Rule 23(b)(3) inquiry into the predominance of common issues relating to reliance is governed not by a balancing test, but by a burden shifting framework. Whereas Plaintiffs have no obligation to demonstrate "price impact" at class certification, *Halliburton II*, 573 U.S. at 278-80, Defendants have one narrow path to challenge the commonality of proof of reliance at class certification: they can rebut the Basic presumption only by proving by a preponderance of the evidence that Defendants' statements had no impact on Extreme's stock price. *Goldman*, 594 U.S. at 126.

To carry their burden of proof, Defendants must completely "sever the link" between the alleged misrepresentations or omissions and Extreme's stock price by proving, by a preponderance of the evidence, that Extreme stock's price movements were not impacted *at all* by Defendants' misstatements or the revelation of their falsity. *Zillow*, 2025 WL 2741642, at *1 (Defendants must show that "the 'alleged *misrepresentation did not actually affect the market price of the stock*'");

---

[2] Defendants bear the burden to prove *a lack* of price impact, not prove price impact.

LKS

July 6, 2026
Page 4

*Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at \*4 (N.D. Cal. Mar. 6, 2024) ("The relevant 'inquiry is whether Defendants have proven a ***complete lack of price impact during the Class Period***, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage.'"). Price impact can take two forms: ***front-end price impact***, meaning there is a causal link between Defendants' misstatements and some portion of an increase in Extreme's stock price when made; or ***back-end price impact***, meaning there is a causal link between disclosures revealing information previously concealed by Defendants' misstatements and omissions and some portion of a decrease in Extreme's stock price. *See In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at \*7 (N.D. Cal. Feb. 4, 2022); *In re NVIDIA Corp. Sec. Litig.*, 825 F. Supp. 3d 1047, 1068 (N.D. Cal. 2026).[3]

Defendants' burden is substantial and they have failed to carry it. ***First***, Defendants offer no expert opinion addressing the absence of price impact. Reply at 4. ***Second***, Defendants do not dispute the existence of front-end price impact, and to avoid any doubt, Dr. Cain presented evidence of front-end price impact. *Id.* at 4-5; Cain Reply Report, ¶¶79-95. This ends the inquiry because "when Plaintiffs are able to show an alleged misrepresentation had a statistically significant front-end price impact, Defendants are not entitled to rely on [] additional back-end arguments to rebut the *Basic* presumption." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at \*3 (S.D.N.Y. Mar. 23, 2020).

***Third***, Defendants' only theory—that the corrective disclosures do not sufficiently "match" the alleged misstatements—does not disprove price impact even if it had any merit. Rather, it is an untimely "mirror image" loss causation argument that courts in this Circuit universally reject. Reply at 5-8; *Zillow*, 2025 WL 2741642, at \*1 ("the 'truth [becomes] known'" when a disclosure "reveal[s] 'true facts concealed'" by a misrepresentation); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at \*5 (C.D. Cal. Oct. 6, 2021) ("[A] corrective disclosure need not be a 'mirror image' disclosure—a direct admission that a previous statement is untrue."). ***Finally***, Defendants' citation to cherry-picked analyst commentary attributing some of Extreme's stock declines to broader market conditions provides no preponderance of evidence proving the complete absence of price impact. Indeed, in rebuttal, Dr. Cain opines on numerous other analysts that attributed Extreme's stock price decline to the newly revealed information concerning Extreme's backlog, growth, and demand. *See* Reply at 6-8; Cain Reply Report ¶¶118-42. Even Defendants' expert conceded that revelations relating to the alleged fraud could have contributed to the stock price declines. *See* Reply at 7.

---

[3] At the merits stage, Plaintiffs will carry the burden of proving loss causation, a fact-intensive inquiry showing a causal link between Defendants' misstatements and the economic loss investors suffered. To the extent that proof of price impact is required, Plaintiffs will make that showing then. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011). But that is not at issue now.



July 6, 2026
Page 5

Plaintiffs have established that "*questions* common to the class predominate," *Amgen*, 568 U.S. at 459 (emphasis in original), including questions of reliance, because all Class members are entitled to the *Basic* presumption. This is not disputed, and the burden then shifts to Defendants. Defendants have not carried their burden of proof because they have failed to "sever the link" between their alleged misrepresentations and omissions, on the one hand, and movements in Extreme's stock price, on the other hand. Indeed, Plaintiffs have foreclosed such a showing in their Reply.

Plaintiffs look forward to addressing these issues and any other issues relevant to the Motion, tomorrow.

Respectfully submitted,

Lauren A. Ormsbee