505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

July 9, 2026

**VIA ECF**

Hon. Trina L. Thompson
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Steamfitters Local 449 Pension & Ret. Security Funds v. Extreme Networks, Inc., et al.*, Case No. 3:24-cv-05102-TLT (N.D. Cal.)

Dear Judge Thompson:

In accordance with the Court's instruction during the July 7, 2026 hearing on Plaintiffs' Motion to Certify Class, enclosed please find Defendants' one-page supplemental response with citations. *See* ECF 159.

Best regards,

*/s/ Melanie M. Blunschi*
Melanie M. Blunschi
of LATHAM & WATKINS LLP

Defendants appreciate the Court's leave to highlight record citations that rebut Plaintiffs' claim that Defendants did not submit expert evidence regarding price impact and therefore have not met their burden to rebut the *Basic* presumption. To be clear, *Goldman* does not require expert evidence to rebut the presumption. It instead directs the Court to consider "all probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense" to assess price impact. *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021). Nevertheless, Defendants submitted a report from Professor David Smith that explained:

> As a matter of economics, an abnormal price decline following a corrective disclosure may not be a reliable measure of the value implications of the allegedly concealed information ***unless the informational content and value implications of the alleged corrective disclosures <u>match</u> those of the allegedly concealed information***.

ECF 146-28 (Smith Rep.) at 33 (emphasis added). Dr. Smith spends 15 pages (a) detailing on a disclosure-by-disclosure basis what was revealed by each corrective disclosure and comparing it to the purported misstatements, and (b) surveying analyst reports released after the purportedly corrective disclosures to assess whether industry experts interpreted any of them as revealing any challenged statement was false. *Id.* at 34-49. Dr. Smith's analysis, as well as the materials he relied on—including Extreme's SEC filings, earnings call transcripts, detailed financial results following the alleged misstatements, full text of the alleged corrective disclosures, and many analyst reports—are all evidence of lack of price impact. *See, e.g.*, ECF 146-2, 146-3, 146-4, 146-5, 146-7, 146-9, 146-10, 146-14, 146-17, 146-20, 146-21, 146-22, 146-23.

Defendants respectfully submit that they have met their burden on price impact, particularly as "the Alleged Corrective Disclosures contain no discussion of allegedly concealed information regarding either the Alleged Channel Stuffing Fraud or the Alleged Backlog Fraud." Smith Rep. at 33; *see also In re Enovix Corp. Sec. Litig.*, 2026 WL 1078569, at *8 (N.D. Cal. Apr. 21, 2026) (denying certification after assessing whether "the information disclosed on the date of the corrective disclosure was corrective of one or more prior false statements") (citation modified); *In re NVIDIA Corp. Sec. Litig.*, 825 F. Supp. 3d 1047, 1072 (N.D. Cal. 2026) ("Avoiding a 'mismatch' 'requires a closer fit (even if not precise) between the front- and back-end statements than courts have required when analyzing the loss causation element[.]") (quoting *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *6 (S.D.N.Y. Mar. 29, 2024)).[1]

In rebuttal at the hearing, Plaintiffs' counsel urged the Court to "read the complaint" and pointed to ***allegations*** that Extreme exceeded revenue guidance for six consecutive quarters after the first challenged statements only because of channel-stuffing and backlog fraud. But they point to no actual disclosure of that "fraud"—and no ***evidence*** making that connection. No analyst report, even the ones Dr. Cain cites, attributes Extreme's results to fraud. ECF 152-3 (Cain Reply Report) at 67-96. Particularly given that a leading public accounting firm (Grant Thornton) signed off on Extreme's financial statements every quarter, and neither the SEC nor any other regulator has found fault with Extreme's accounting in the nearly two years since Plaintiffs filed these claims, crediting Plaintiffs' fraud allegations does not comport with a "good dose of common sense." *Goldman*, 594 U.S. at 122; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (Plaintiffs must "actually *prove*—not simply plead" predominance).

---

[1] Post-*Goldman*, Plaintiffs cannot rely on *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020), to argue front-end impact alone can show price impact. *See Crews v. Rivian Auto. Inc.*, 2024 WL 3447988, at 13 n.8 (C.D. Cal. Jul. 17, 2024).