UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, on Behalf of Itself and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>EXTREME NETWORKS, INC., EDWARD B. MEYERCORD III, RÉMI THOMAS, CRISTINA TATE, KEVIN RHODES, NORMAN RICE, JONAS BROWN,<br><br>    Defendants. | Case No.  24-cv-05102-TLT<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVES, AND APPOINT CLASS COUNSEL**<br><br>Re: Dkt. Nos. 140, 146, 152 |

Before the Court is Plaintiffs Oklahoma Firefighters Pension and Retirement System ("Oklahoma Fire"), Oklahoma Police Pension and Retirement System ("Oklahoma Police"), Oakland County Voluntary Employees' Beneficiary Association ("Oakland County VEBA"), and Oakland County Employees' Retirement System ("Oakland County ERS")'s Motion to Certify Class, Appoint Plaintiffs as Class Representatives, and Appointing Labaton Keller Sucharow LLP ("Lead Counsel" or "Labaton") as Class Counsel (the "Motion") against Defendants Extreme Networks, Inc. ("Extreme"), Edward B. Meyercord III, Rémi Thomas, Cristina Tate, Kevin Rhodes, Norman Rice, and Jonas Brown.

The parties have narrowed the scope of the certification dispute, focusing on the predominance requirement of Rule 23(b)(3).  The questions before the Court, therefore, are (1) whether Plaintiffs are entitled to any class-wide presumption of reliance and (2) whether Plaintiffs' proposed out-of-pocket damages methodology measures damages on a class-wide basis consistent with their misstatement and scheme theories of liability.

United States District Court
Northern District of California

After reviewing the parties' briefs, the record, and the relevant legal authority, and for the reasons below, the Court **GRANTS** the Motion.

## I.     PROCEDURAL BACKGROUND

Since the Court's Order denying Defendants' Motion to Dismiss on March 23, 2026, the facts of this action have not changed and are recited in *Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, 824 F. Supp. 3d 983 (N.D. Cal. 2026); ECF 132.  Further, the parties are familiar with the factual background of this action.  Accordingly, this Order addresses the procedural background below.

On August 13, 2024, Plaintiff Steamfitters Local 449 Pension & Retirement Security Funds filed a federal securities class action against Defendants.  ECF 1.  On December 30, 2024, the Court granted the unopposed motion to appoint lead plaintiff and lead counsel, appointing Oklahoma Fire, Oklahoma Police, Oakland County VEBA, and Oakland County ERS as lead plaintiffs.  ECF 51.

On February 14, 2025, Plaintiffs filed the FAC against Defendants Extreme and its key officers and high-level executives, namely: (i) Chief Executive Officer Edward B. Meyercord III; (ii) Chief Financial Officers ("CFO") Rémi Thomas (who was the CFO until February 2023), Christina Tate (who was the CFO from February 2023 to May 2023), and Kevin Rhodes (who was the CFO from May 2023 until the end of the Class Period); (iii) Chief Operating Officer Norman Rice; and (iv) Senior Director of Worldwide Distribution Sales and Strategy Jonas Brown.  ECF 59.  Plaintiffs allege that Defendants have violated (1) Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder, (2) Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder, and (3) Section 20(a) of the Exchange Act.  *Id*. ¶¶ 559–85.

On April 15, 2025, Defendants filed a motion to dismiss the FAC and requested judicial notice of selected exhibits.  ECF 74, 75.  The Court granted the motion to dismiss the FAC as to all claims, with leave to amend, finding that Plaintiffs failed to allege the requisite manipulative sales practices and falsity with particularity as to the channel stuffing and backlog schemes.  ECF 92.  The Court also granted judicial notice of the exhibits for their existence, but not for the truth of the matters asserted therein.  *Id*.

United States District Court
Northern District of California

On September 9, 2025, Plaintiffs filed the SAC.  ECF 95.  Soon thereafter, on October 3, 2025, Defendants filed a motion to dismiss the SAC and requested judicial notice of selected exhibits.  ECF 104, 105.  On March 23, 2026, the Court denied the motion to dismiss the SAC.  *Steamfitters*, 824 F. Supp. 3d 983; ECF 132.  The Court found that the SAC cured the deficiencies identified in the earlier dismissal, the challenged statements are not non-actionable statements of corporate optimism and are not protected by the PSLRA safe harbor provision, the SAC creates a strong inference of scienter under holistic review and the core-operations doctrine, and loss causation, scheme liability, and Section 20(a) claims were adequately alleged.  *Id*. Finally, the Court granted judicial notice of the exhibits for their existence, but not for the truth of the matters asserted therein.  *Id.*  Defendants answered the SAC on April 13, 2026.  ECF 139.

The instant Motion was filed on April 17, 2026, and the opposition to the Motion and the reply in support of the Motion were timely filed.  ECF 140, 146, 152.  On July 1, 2026, the Court issued supplemental questions to the parties to confirm whether the parties direct the Court to focus solely on the 'predominance' requirement under Rule 23(b)(3) and how the Court should balance Plaintiff's burden on the predominance requirement against Defendants' burden to establish price impact.  ECF 155.  On July 6, 2026, the Court received the Parties' responses to the questions.  ECF 156–157.  On July 7, 2026, the hearing for the Motion was held.  ECF 159.

Before the Court is Plaintiffs' Motion to Certify Class, Appoint Plaintiffs as Class Representatives, and Appoint Lead Counsel as Class Counsel.  ECF 140, 146, 152.

## II.    LEGAL STANDARD

Before it can certify a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" of Federal Rule of Civil Procedure 23 have been satisfied.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Olean*, 31 F.4th at 665 (aligning with the other circuits).

3

United States District Court
Northern District of California

Rule 23 consists of two parts. Fed. R. Civ. P. 23. First, Plaintiff must satisfy all four requirements of Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Olean*, 31 F.4th at 663; Fed. R. Civ. P. 23(a).

Second, Plaintiff must demonstrate through evidentiary proof that the class satisfies at least one of the three subsections under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Classes certified under Rule 23(b)(3) require that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). For example, to determine whether a common question prerequisite is satisfied, "a district court is limited to resolving whether the evidence establishes that a common question is capable of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

## III.    DISCUSSION

The Court focuses on the predominance requirement. The other five Rule 23(b)(3) requirements (numerosity, commonality, typicality, adequacy, and superiority) are undisputed. ECF 156–57. In addition, market efficiency is undisputed. Accordingly, the Court focuses on (1) whether Plaintiffs are entitled to any class-wide presumption of reliance and (2) whether Plaintiffs' proposed out-of-pocket damages methodology measures damages on a class-wide basis consistent with their misstatement and scheme theories of liability.

4

United States District Court
Northern District of California

### A.    Plaintiffs are entitled to *Basic* class-wide presumption of reliance.

Plaintiffs contend that, because Extreme's stock traded in an efficient market and Defendants do not dispute market efficiency, they are entitled to the *Basic* fraud-on-the-market presumption of reliance for both their misstatement and scheme theories, bolstered by Dr. Cain's expert report.  ECF 152 at 8.  Plaintiffs claim that the burden then shifts to Defendants to rebut this presumption by a preponderance of the evidence that there is no price impact, but Defendants have failed to do so.  *Id* at 8.  Further, Plaintiffs are also entitled to a presumption of reliance under *Affiliated Ute* because Defendants engaged in a sustained, undisclosed scheme to deceive investors.  ECF 140 at 29–30.

Defendants claim that this is "not a run-of-the-mill" securities case and that Plaintiffs cannot rely on *Basic* or *Affiliated Ute* to establish class-wide reliance.  ECF 146.  Defendants argue that "there is no back-end price impact and thus no presumption of reliance" because none of the five alleged corrective disclosures actually revealed "any aspect of the allegedly concealed channel stuffing scheme or link the revenue declines to the collapse of the alleged scheme." *Id*. at 19–21.  Further, Defendants contend the backlog statements mismatch with the corrective disclosures because those disclosures did not state that backlog orders were "not as firm and noncancellable as Defendants allegedly represented at the time," but instead attributed backlog declines to supply-chain normalization, channel digestion, elongated sales cycles, and other industry-wide factors already known to the market.  *Id*. at 8, 17–22.  Defendants argue that this substantive mismatch between misstatements and disclosures rebuts the *Basic* presumption and allows the Court to "infer a lack of front-end price impact as well." *Id*.  Defendants argue that the *Affiliated Ute* presumption is also unavailable because Plaintiffs' claims are not primarily omission-based but rest on affirmative misstatements and that "Plaintiff can prove reliance through ordinary means by demonstrating a connection between the alleged misstatement and its injury. *Id*. at 17, 22–23.

The *Basic* fraud-on-the-market presumption, articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), rests on the principle that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price

5

may be considered to have done so in reliance on the misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283–84 (2014). "When this presumption applies, investors do not need to demonstrate individual reliance for class certification purposes." *In re Enovix Corp. Sec. Litig.*, No. 23-cv-00071-SI, 2026 WL 1078569, at *6 (N.D. Cal. Apr. 21, 2026). "[T]o invoke the *Basic* presumption, a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co.*, 573 U.S. at 277–78. With the exception of materiality, plaintiffs seeking to certify a class "must prove the *Basic* prerequisites before class certification[.]" *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 119 (2021) (citing *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)).

The *Basic* presumption is rebuttable. "The defendant may ... rebut the presumption through '[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price.'" *Goldman*, 594 U.S. at 118 (quoting *Basic*, 485 U.S. at 248). This includes "by showing that the alleged misrepresentation did not actually affect the stock's price—that is, that the misrepresentation had no 'price impact.'" *Halliburton*, 573 U.S. at 263–64. Although plaintiffs need not prove price impact in order to invoke the *Basic* presumption, "defendants should at least be allowed to defeat the presumption at the class certification stage through evidence that the misrepresentation did not in fact affect the stock price." *Id.* at 278–79. This evidence may include "direct as well as indirect price impact evidence." *Id.* at 283. "[C]ourts 'should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense.'" *Goldman*, 594 U.S. at 122 (citations omitted).

At the class certification stage, the defendant bears the burden of persuasion to prove a lack of price impact by a preponderance of the evidence. *Id.* at 126. That is, defendant's burden requires showing "that the alleged misrepresentation did not actually affect the market price of the stock." *Jaeger v. Zillow Grp., Inc.*, 2025 WL 2741642, at *1 (9th Cir. Sept. 26, 2025). "Loss causation, on the other hand, is a merits concept similar to proximate cause, which requires the

United States District Court
Northern District of California

plaintiff to show that the alleged misrepresentations caused the price of the stock the plaintiff purchased to become inflated, and that the inflation caused economic loss when the statements were revealed as false." *Id.* (citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020)). "The district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact. The defendant's burden of persuasion will have bite only when the court finds the evidence in equipoise—a situation that should rarely arise." *Goldman*, 594 U.S. at 126–27.

The *Affiliated Ute* presumption of reliance is "generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972); *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). In cases in which both omissions and misrepresentations are alleged, the *Affiliated Ute* presumption "should be confined to cases that primarily allege omissions." *Id.* at 1064.

The Court finds that Defendants fail to rebut the *Basic* presumption of reliance arising from their alleged misrepresentation by a preponderance of the evidence. "Price impact can be observed on the 'front-end' (*i.e.*, misstatements causing or maintaining inflation) or on the 'back-end' (*i.e.*, a decline in price caused by the corrective disclosures)." *In re NVIDIA Corp. Sec. Litig.*, 825 F. Supp. 3d 1047, 1068 (N.D. Cal. 2026) (citing *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-2033-YGR, 2022 WL 354785, at *7 (N.D. Cal. Feb. 4, 2022)). Plaintiff's expert, Dr. Cain, conducted an event study to demonstrate the link between alleged misrepresentation and stock price, and the findings show statistically significant front-end price impacts following Defendants' alleged misstatements on July 27, 2022, October 27, 2022, May 17, 2023, and August 2, 2023. ECF 152-3 ¶¶ 79–95, 143–145, Exhibit 1. Defendants do not present any rebuttal evidence of these front-end price impacts, but instead argue that a lack of front-end price impact can be inferred from their back-end price impact argument.

However, the Court is not persuaded by Defendants' intended inference from back-end price impact to front-end price impact to sever the link between alleged misrepresentation and stock price at this stage. Like the front-end price impact, Dr. Cain demonstrated statistically significant price declines after each corrective disclosure on January 25, 2023, August 25, 2023,

United States District Court
Northern District of California

7

November 1, 2023, January 9, 2024, and January 31, 2024, and further explained how the corrective disclosures directly link stock price with the underlying alleged scheme and misstatement.  ECF 152-3 ¶¶ 96–104, 143, 147, Exhibit 2.  Defendants' expert did not dispute the validity of Dr. Cain's analysis, nor did he exclude the possibility of a stock price impact resulting from the alleged misrepresentation.  ECF 152-4 at 18, 55, and 57.

Although Defendants emphasize temporal mismatches between backlog statements and corrective disclosures coupled with the analyst reports, SAC alleges that Defendants "recognized product revenues at the moment when its products were shipped to" distributors, partners, and customers in their direct channels rather than at end-user sale, ECF 95 ¶ 64, and that Defendants "sought to prevent the return or rotation of the inventory by threatening to bar distributors from re-ordering products for 12 months," *Steamfitters*, 824 F. Supp. 3d at 992 (citing ECF 95 ¶¶ 11, 172, 176).  The SAC also includes contemporaneous evidence from FEs over the course of Defendants' scheme.  Consequently, the Court finds that identifying precise connections between backlog statements and corrective disclosures and the stock price is, rather, the loss-causation challenge, which is inappropriate at the class certification stage and should be reserved for the later merit stages.  *Goldman*, 594 U.S. at 122 n.2. ("[T]he district court must use the evidence to decide the price impact issue "while resisting the temptation to draw what may be obvious inferences for the closely related issues that must be left for the merits, including materiality.") (citation omitted); *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, No. 22-cv-03811-TLT, 2025 WL 1243818, at *8 (N.D. Cal. Apr. 25, 2025), *leave to appeal denied*, No. 25-3021, 2025 WL 2028400 (9th Cir. July 17, 2025) ("Defendants' loss causation arguments [] are premature and not a bar to class certification.").

Accordingly, Plaintiffs are entitled to the *Basic* fraud-on-the-market presumption of reliance for both their misstatement and scheme claims.  Because Plaintiffs have met the *Basic* presumption of reliance, the Court declines to analyze *Affiliated Ute* to establish class-wide reliance.

**B.     Damages are measurable on a class-wide basis**

Plaintiffs submit Dr. Cain's out-of-pocket methodology as the standard, universally

United States District Court
Northern District of California

accepted method for calculating damages in Section 10(b) class actions and argue this methodology can be applied class-wide to both misstatement and scheme theories. ECF 140 at 30–31; ECF 152 at 15, 17. Plaintiffs also contend that, given the substantial factual overlap between misstatement and scheme claims recognized in this Court's Order, *Steamfitters*, 824 F. Supp. 3d 983, the same methodology can measure inflation attributable to both theories and address the materialization of risk of loss causation. *Id*. at 16, 18–20.

Defendants argue that "Plaintiffs have not shown that damages are measurable on a class-wide basis" under *Comcast*. ECF 146 at 8, 23; *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Defendants characterize Dr. Cain's damages discussion as boilerplate opinions from prior cases, untethered to Extreme's specific facts, and contend he has not demonstrated how his out-of-pocket formula will measure only those damages attributable to (1) undisclosed scheme liability theory, which allegedly began before the class period and was never publicly revealed, or (2) the misstatement liability theory, which operates on a different timeline and must be distinguished from macroeconomic and industrywide factors on Extreme's stock price movements. *Id*. at 9, 24–29. Defendants further assert that Dr. Cain has offered no viable methodology for Plaintiffs' class-wide materialization of risk theory because his model "does not offer a way to isolate the portion of Extreme's stock price drop attributable to Extreme-specific issues rather than industry-wide trend" and has failed to account for the economic differences between the information allegedly concealed by the false statement and the information disclosed by the corrective disclosures. *Id*. at 29–31.

The Court finds that although Defendants construe *Comcast* strictly, Plaintiffs are "not required to actually prove their case through common proof" and "may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025); *AMI – Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*, No. 23-cv-01186-RFL, 2026 WL 1382950, at *6 (N.D. Cal. May 18, 2026) (rejecting defendant's *Comcast* challenges); *accord In re NVIDIA*, 825

9

F. Supp. 3d at 1089.

The Court also finds that, because substantial factual overlap exists between the misstatement and scheme liability theories, the reliability and class-wide applicability of Plaintiff's out-of-pocket methodology to both theories is not undermined. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 72, 81 (2019) ("Court and the Commission have long recognized considerable overlap among the subsections of the Rule [10b-5] and related provisions of the securities laws. … [T]his considerable overlap suggests []that Lorenzo's conduct ran afoul of subsections (a) and (c), as well as the related statutory provisions."). While the primary distinction between these two theories may be that misstatement liability concerns what defendants said and scheme liability concerns what defendants did, the underlying alleged scheme and misstatement in this action share a common factual nucleus. *See supra* III.A.

Further, Defendants merely challenge Plaintiff's out-of-pocket methodology, without offering any alternative methodology to distinguish between the two theories. At best, Defendants' expert created a hypothetical scenario involving a known and constant 1% expected cancellation rate, a concealed 10% true rate, and a realized 40% cancellation outcome. ECF 146-28 ¶¶ 98–99. Setting up their own hypothetical to challenge Dr. Cain's out-of-pocket methodology is somewhat contradictory, as it also fails to consider other market factors as rigorously as under their own construction of *Comcast,* and it cannot bar Plaintiff's model from passing muster at the class certification stage. *See Wells Fargo*, 2025 WL 1243818 at *8. Consequently, the confounding effect of other market factors Defendants point to remains specific factual inputs to the methodology used, rather than a structural flaw in the methodology adopted, and such analysis and outcome are appropriate for the merits stage beyond class certification. Therefore, Plaintiffs' out-of-pocket methodology reliably shows that their damages more than likely stemmed from Defendant's actions that created the legal liability. *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226 YGR, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016) (citing *Levya v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

Accordingly, the Court finds that Plaintiffs' model for damages is measurable on a class-wide basis.

### C.    Lead Counsel will adequately represent the class interests

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1). When appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*. at 23(g)(1)(A)(i)–(iv).  The adequacy of counsel depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Walter v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).

The Court finds that Labaton, as lead counsel, is qualified to represent the interests of the class members.  Labaton has significant experience prosecuting complex securities class actions, deep knowledge of securities law, and an exemplary record of success, and Defendants do not dispute the adequacy of class counsel.  ECF 140 at 33.  Further, the Court previously granted the unopposed motion to appoint Labaton as lead counsel for the class and Hagens Berman Sobol Shapiro LLP as liaison counsel for the class.  ECF 51.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have satisfied the Rule 23 requirements.  The Court **GRANTS** Plaintiffs' motion for class certification and certifies a class of investors defined as:

> All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Extreme during the period from July 27, 2022 through January 30, 2024, inclusive, and who were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer, director or control person of Extreme during the Class Period and their immediate families; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling or beneficial interest; (v) the subsidiaries and affiliates of Extreme; (vi) Extreme's employee retirement and benefit plan(s), if any, and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vii) the legal representatives, heirs, successors- in-interest, or assigns of any such excluded person, in their capacities as such.

The Court further **ORDERS** that Plaintiffs Oklahoma Firefighters Pension and Retirement

United States District Court
Northern District of California

System, Oklahoma Police Pension and Retirement System, Oakland County Voluntary Employees' Beneficiary Association, and Oakland County Employees' Retirement System be appointed as Class Representatives, and **ORDERS** that Labaton Keller Sucharow LLP shall serve as Class Counsel.

A Further Case Management Conference is set for September 10, 2026, at 02:00 PM in San Francisco - Videoconference Only. The Case Management Statement is due by September 3, 2026.  The ADR deadline is September 4, 2026.  ECF 113.

This Order resolves ECF 140, 146, and 152.

IT IS SO ORDERED.

Dated: July 16, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

12