**LABATON KELLER SUCHAROW LLP**
Lauren A. Ormsbee (*pro hac vice*)
Jesse L. Jensen (*pro hac vice*)
Adam Federer (*pro hac vice*)
Danielle S. Lazarus (*pro hac vice*)
Jacqueline E. Lacovara (*pro hac vice*)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
jjensen@labaton.com
afederer@labaton.com
dlazarus@labaton.com
jlacovara@labaton.com

*Class Counsel and Counsel for Class Representatives*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (Bar No. 250893)
Reed R. Kathrein (Bar No. 139304)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

*Liaison Counsel for the Class*

*[Additional Counsel appear on signature page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DIAIN**

**STRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, on Behalf of Itself and All Others Similarly Situated,

Plaintiffs,

v.

EXTREME NETWORKS, INC., EDWARD B. MEYERCORD III, RÉMI THOMAS, CRISTINA TATE, KEVIN RHODES, NORMAN RICE, JONAS BROWN

Defendants.

Case No. 3:24-cv-05102-TLT

**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date**: December 1, 2026
**Time**: 2:00 p.m.
**Judge**: Hon. Trina L. Thompson
**Courtroom**: No. 9, 19th Floor

**TABLE OF CONTENTS**

Page


NOTICE OF MOTION ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 2

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

PRELIMINARY STATEMENT ..... 2

A. Overview of the Litigation ..... 3

B. Settlement Discussions ..... 6

C. Terms of the Proposed Settlement ..... 6

D. Proposed Schedule of Events ..... 9

ARGUMENT ..... 10

I. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ..... 10

A. Class Representatives and Class Counsel Have Adequately Represented the Class ..... 11

B. The Settlement Resulted from Good Faith, Arm's-Length Negotiations ..... 12

C. The Relief Provided by the Settlement Is Adequate in Satisfaction of Rule 23(e)(2)(C) ..... 13

1. Many Challenges to Obtaining a Recovery Remained ..... 13

2. Proposed Plan of Allocation for Distributing Relief Treats Class Members Equitably ..... 18

3. Anticipated Legal Fees and Expenses ..... 20

D. Class Members Are Treated Equitably Relative to One Another ..... 21

II. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE ..... 22

A. Notice Procedures ..... 22

B. Form and Substance of Proposed Notice ..... 23

C. Claims Administration ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 14, 15

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) .......... 15

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 2068424 (S.D. Cal. June 8, 2022) .......... 12

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
No. 19-cv-6361, slip op. (N.D. Cal. Aug. 9, 2024) (ECF No. 468) .......... 22

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
No. 3:19-cv-06361-RS, slip op. (N.D. Cal. Dec. 4, 2024)(ECF No. 481) .......... 20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 16

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 17

*Ferreira v. Funko, Inc.*,
2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) .......... 12

*Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*,
2026 WL 2031769 (N.D. Cal. July 13, 2026) .......... 13

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......... 8

*In re Honest Co., Inc. Sec. Litig.*,
No. 21-CV-07405, slip op. (C.D. Cal. May 6, 2025) (ECF No. 311) .......... 22

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 14

*Knapp v. Art. com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) .......... 13

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .......... 23

*In re LendingClub Sec. Litig.*, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) .......... 7

*Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014) .......... 15

*Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) .......... 10

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .......... 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). Notice .......... 23

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 17

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 22-CV-03023-TLT, 2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) .......... 12, 20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) .......... 7

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......... 16

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......... 13

*SEB Inv. Mgmt. AB v. Wells Fargo & Co., et al.*, No. 22-CV-03811-TLT, 2026 WL 1458903 (N.D. Cal. May 21, 2026) .......... 7, 20

*In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......... 8

*Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, No. 24-CV-05102-TLT, 2026 WL 2070425 (N.D. Cal. July 16, 2026) .......... 12

*Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, No. 26-4910 (9th Cir. July 30, 2026), Dkt. No. 1.1 .......... 5, 7

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .......... 10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .......... 13

*Vataj v. Johnson*, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......... 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......... 21

*Wicks v. Alphabet, Inc.*,
No. 18-cv-06245-TLT, 2024 WL 5484607 (N.D. Cal. Apr. 2, 2024) .......... 11

**Statutes**

15 U.S.C. § 78u-4(a)(4) .......... 20, 22

15 U.S.C. § 78u-4(a)(7) .......... 23

15 U.S.C. § 78u-4(a)(7)(A) .......... 24

15 U.S.C. § 78u-4(a)(7)(B) .......... 24

15 U.S.C. § 78u-4(a)(7)(C) .......... 24

15 U.S.C. § 78u-4(a)(7)(D) .......... 24

15 U.S.C. § 78u-4(a)(7)(E) .......... 24

15 U.S.C. § 78u-4(a)(7)(F) .......... 24

15 U.S.C. § 78u-4(e) .......... 18

28 U.S.C. § 1715 .......... 23

**Court Rules**

Fed. R. Civ. P. 23(c)(2)(B) .......... 23

Fed. R. Civ. P. 23(e)(1) .......... 10

Fed. R. Civ. P. 23(e)(1)(B) .......... 10

Fed. R. Civ. P. 23(e)(2) .......... 10, 11

Fed. R. Civ. P. 23(e)(2)(B) .......... 12

Fed, R. Civ. P. 23(e)(2)(D) .......... 18

**Other Authorities**

Laarni Bulan and Eric Tam, *Securities Class Action Settlements – 2025 Review and Analysis* (Cornerstone Research 2026), Ex. 4 .......... 17

Laarni Bulan and Eric Tam, *Securities Class Action Settlements – 2026 Midyear Assessment* (Cornerstone Research 2026), Ex. 5 .......... 17

*N.D. Cal. Procedural Guidance for Class Action Settlements* ("Guidance"), ¶1.1 .......... *passim*

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 1, 2026, at 2:00 p.m., or as soon thereafter as they may be heard, Court-appointed Class Representatives Oklahoma Firefighters Pension and Retirement System ("Oklahoma Fire"), Oklahoma Police Pension and Retirement System ("Oklahoma Police"), Oakland County Voluntary Employees' Beneficiary Association ("Oakland VEBA"), and Oakland County Employees' Retirement System ("Oakland ERS") (collectively, "Class Representatives" or "Lead Plaintiffs"), will move this Court for an order, pursuant to Federal Rule of Civil Procedure 23(e)(1): (i) preliminarily approving the proposed Settlement of the above-captioned certified class action (the "Action"); (ii) approving the form and manner of notice of the proposed Settlement and related relief to the Class; (iii) scheduling a final settlement hearing before the Court to determine whether the Settlement, the proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's motion for attorneys' fees and Litigation Expenses should be approved; (iv) appointing A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator") as the Claims Administrator to provide all notices, process Claim Forms, and administer the Settlement; and (v) granting such other and further relief as this Court deems just and proper.

The Motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Lauren A. Ormsbee in Support of Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, dated October 15, 2026 ("Ormsbee Decl."), with annexed exhibits, including the Stipulation and Agreement of Settlement, dated October 15, 2026 ("Stipulation"), which is annexed as Exhibit 1.[1]

Pursuant to Civil Local Rule 7-2 and the Court's Standing Order for Civil Cases, the Motion is noticed for a hearing on December 1, 2026, at 2:00 p.m. However, Defendants do not oppose the Motion and the Parties agree that it may be decided on the papers, should the Court concur that a hearing is not required.

---

[1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. All references to "Ex." herein are references to exhibits attached to the Ormsbee Declaration. Unless otherwise noted, citations and internal quotations have been omitted.

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is also submitted herewith.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court will likely be able to approve the proposed $51 million cash Settlement of the Action pursuant to Rule 23(e)(2), such that notice of the Settlement should be provided to members of the certified Class.

2. Whether the Court should approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), and the Postcard Notice, which are attached as Exhibits 1 through 4 to the Preliminary Approval Order, as well as the manner of notifying the Class of the Settlement and related relief.

3. Whether the Court should set a date for a hearing on final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses (the "Settlement Hearing").

4. Whether the Court should appoint A.B. Data as the Claims Administrator to provide all notices, process Claim Forms, and administer the Settlement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Class Representatives respectfully submit this memorandum of points and authorities in support of their unopposed Motion, on behalf of themselves and the certified Class, for preliminary approval of the proposed Settlement of this certified class action in the amount of $51 million in cash, pursuant to the terms set forth in the Stipulation.[2] The Settlement is with all defendants: Extreme Networks, Inc. ("Extreme" or the "Company"), Edward B. Meyercord III,

[2] The Stipulation is attached as Exhibit 1 to the Ormsbee Declaration, submitted herewith.

Rémi Thomas, Cristina Tate, Kevin Rhodes, Norman Rice, and Jonas Brown (collectively, the "Individual Defendants" and, with Extreme, the "Defendants"), and will resolve the Action.

Class Representatives respectfully submit that the Settlement is a very favorable result for the Class and should be preliminarily approved by the Court. The decision to settle was informed by a comprehensive investigation into the claims and defenses in the Action, intensive motion practice, certification of the Class, and extensive arm's-length negotiations overseen by a highly respected mediator. For the reasons stated herein, Class Representatives respectfully request that the Court grant this Motion.

**A. Overview of the Litigation**

On August 13, 2024, the Action was commenced by the filing of an initial complaint, which asserted claims against Extreme and certain of its current and former executives under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and claims against certain current and former executives of the Company under Section 20(a) of the Exchange Act. ECF No. 1.

On December 30, 2024, the Court appointed Oklahoma Fire, Oklahoma Police, Oakland VEBA, and Oakland ERS as Lead Plaintiffs and approved their selection of Labaton Keller Sucharow LLP ("Labaton," "Lead Counsel," or "Class Counsel") as Lead Counsel for the class. ECF No. 51.

On February 14, 2025, Lead Plaintiffs filed the Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), which alleged violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class consisting of all persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Extreme during the period from July 27, 2022 through January 30, 2024, inclusive, and were damaged thereby. In addition to the claims asserted in the initially filed complaint based on false and misleading statements and omissions, the Amended Complaint added claims against the Individual Defendants for "scheme liability" under the Exchange Act based on alleged violations of SEC Rules 10b-5(a) and (c). The Amended Complaint also added Extreme executives Norman

Rice and Jonas Brown as additional individual defendants for the "scheme liability" claim. ECF No. 59.

On April 15, 2025, Defendants moved to dismiss the Amended Complaint asserting (among other things) that Lead Plaintiffs failed to sufficiently allege: (i) any actionable misrepresentation, (ii) that Defendants acted with scienter in making any alleged misrepresentation, or (iii) a causal connection between the alleged fraud and Lead Plaintiffs' alleged losses (the "First Motion to Dismiss"). ECF No. 74. Lead Plaintiffs filed their opposition on June 13, 2025. ECF No. 81. On July 28, 2025, Defendants filed their reply papers. ECF No. 83. On August 12, 2025, the Court held a hearing on Defendants' motions, granted them in full (ECF No. 88), and on August 15, 2025, granted leave for Lead Plaintiffs to amend their pleadings by September 9, 2025. ECF No. 92.

On September 9, 2025, Lead Plaintiffs filed the operative Second Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint" or "Complaint"). ECF No. 95.

On October 3, 2025, Defendants filed a motion to dismiss the Complaint ("Second Motion to Dismiss"). ECF No. 104. On November 3, 2025, Lead Plaintiffs filed their opposition. ECF No. 109. On November 25, 2025, Defendants filed their reply papers. ECF No. 110. On March 3, 2026, the Court held a hearing on Defendants' motions. ECF No. 126. On March 23, 2026, the Court issued an order denying the Second Motion to Dismiss and sustaining the Complaint in full, including all alleged misstatements and omissions as well as the alleged "scheme liability" claim under Rules 10b-5(a) and (c). ECF No. 132.

On April 13, 2026, Defendants filed their answer to the Second Amended Complaint. ECF No. 139.

On April 17, 2026, Lead Plaintiffs moved for certification of the class, which was supported by an expert report on market efficiency by Matthew D. Cain, Ph.D., and declarations on behalf of each Lead Plaintiff. ECF No. 140. On May 15, 2026, Defendants filed their opposition to the motion for class certification, supported by an expert report. ECF No. 146. On

June 5, 2026, Lead Plaintiffs filed their reply, which was supported by a supplemental expert report by Matthew D. Cain, Ph.D. ECF No. 152.

On July 7, 2026, the Court heard argument on Lead Plaintiffs' motion to certify the class. ECF No. 159. On July 9, 2026, at the invitation of the Court, Defendants filed an additional supplemental submission concerning issues raised at the class certification hearing. ECF No. 162.

On July 16, 2026, the Court granted the class certification motion and appointed Lead Plaintiffs as Class Representatives and Labaton Keller Sucharow LLP as Class Counsel. ECF No. 163. The class certified by the Court is:

> All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Extreme during the period from July 27, 2022 through January 30, 2024, inclusive, and who were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer, director or control person of Extreme during the Class Period and their immediate families; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling or beneficial interest; (v) the subsidiaries and affiliates of Extreme; (vi) Extreme's employee retirement and benefit plan(s), if any, and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vii) the legal representatives, heirs, successors-in-interest, or assigns of any such excluded person, in their capacities as such.[3]

On July 31, 2026, Defendants petitioned the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") for permission to appeal the class certification order. *See* ECF No. 166; *Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, No. 26-4910 (9th Cir. July 30, 2026), Dkt. No. 1.1. The motion was pending at the time the Parties agreed to settle the Action.

In connection with formal discovery, Lead Plaintiffs, Defendants, and third parties have collectively produced more than 550,000 documents (approximately 2.5 million pages). Additionally, the Parties collectively conducted nineteen (19) fact depositions, in addition to three

[3] The "Class" defined in the Stipulation, at ¶1(f), is the same as the class certified by the Court (*see* ECF No. 163). *See N.D. Cal. Procedural Guidance for Class Action Settlements* ("Guidance"), ¶1.1. (requiring disclosure of any differences between settlement class and the certified class). For the Court's convenience, a table outlining relevant Guidance requirements, along with where responsive information can be found in Class Representatives' Motion papers, is attached as Appendix A.

class representative and two expert depositions conducted in connection with the motion for class certification.

**B. Settlement Discussions**

While the Parties were briefing the First Motion to Dismiss, they participated in a mediation session on June 18, 2025, with David Murphy of Phillips ADR Enterprises (the "Mediator"), a well-respected and experienced mediator of complex class actions, which was not successful.

Although the initial mediation was not successful, in Summer 2026, counsel for Class Representatives and Defendants began discussing the possibility of reconvening to explore a mediated resolution. On September 29, 2026, Class Counsel and Defendants' Counsel, among others, participated in a full-day, in-person mediation session before the Mediator. In advance of the session, the Parties exchanged detailed mediation statements, together with numerous supporting exhibits, which addressed liability, damages, and ability-to-pay issues. The mediation ended without an agreement to settle, but the Parties continued discussions. That evening, the Mediator issued a mediator's recommendation for the Parties to resolve the matter for $51 million in cash.

On September 30, 2026, the Parties accepted the Mediator's recommendation, and the Settlement's primary terms were memorialized in a term sheet executed on that same day (the "Term Sheet"). On October 15, 2026, the Parties executed the Stipulation.

**C. Terms of the Proposed Settlement**

The Settlement provides that Defendants will pay, or cause to be paid, $51 million in cash. *See* Stip., ¶6. The Settlement does not involve any admissions of liability or weakness in the claims. *See* Stip., ¶50. The Settlement Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members who submit timely and valid Claim Forms, in accordance with a plan of allocation approved by the Court. The Settlement is not a claims-made settlement and

there is no reversion. *See* Stip., ¶11. Once the Settlement is effective, Defendants and/or any other Person(s) funding the Settlement Amount will have no right to the return of the Settlement Fund, or any portion thereof, for any reason. *Id.*; Guidance ¶1.7. (requiring disclosure of any reversions).

In exchange for the payment of the Settlement Amount, upon the Effective Date of the Settlement, Class Representatives and each Class Member shall release and dismiss the "Released Plaintiffs' Claims" against the Released Defendant Parties. *See* Stip., ¶4.[4] The definition of Released Plaintiffs' Claims provides Defendants and the other Released Defendant Parties with "complete peace" but releases only claims that Class Representatives and any other members of the Class: (a) asserted in the Action or (b) could have asserted in any forum, that arise out of, or relate in any way to, or are based upon both: (1) the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the complaints filed in the Action, and (2) the purchase, acquisition, sale, disposition, or holding, of Extreme Networks, Inc. publicly traded common stock during the Class Period. *See* Stip., ¶1(mm).

The proposed release is, therefore, tailored to the conduct at issue in the Action and consistent with release provisions approved by this Court and other courts in this District. *See, e.g.*, *SEB Inv. Mgmt. AB v. Wells Fargo & Co., et al.*, No. 22-CV-03811-TLT, 2026 WL 1458903, at *2 (N.D. Cal. May 21, 2026) (approving similar release of claims that "arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action," and that relate to the purchase or acquisition of Wells Fargo common stock during the Class Period); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *3-4 (N.D. Cal. Mar. 16, 2018) (approving similar release "anchored to the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period"); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as

[4] Defendants are also releasing claims against the Released Plaintiff Parties related to the institution, prosecution, or settlement of the case. *See* Stip., ¶5.

that underlying the claims in the settled class action....").[5]

The Settlement does not release claims asserted in related shareholder actions brought against certain Extreme officers and directors, including *In re Extreme Networks, Inc. Stockholder Derivative Litigation*, Master File No. 3:25-cv-02101-TLT, and *Miller v. Meyercord, et al.*, No. 25-cv-00161-BO-KS (E.D.N.C.). *See* Stip., ¶1(mm). The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release. *See* Guidance ¶1.4. (requiring disclosure of other cases affected by settlement).

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the Settlement are the Term Sheet, the Stipulation, and the confidential Supplemental Agreement, dated October 15, 2026, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests. *See* Stip., ¶42. Class Representatives will submit the Supplemental Agreement under seal and request that the Court keep this information confidential. Indeed, it is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").

After approval of the Settlement and approval of the Plan of Allocation for the proceeds of the Settlement, the Claims Administrator will process all claims received and will calculate their value according to the plan of allocation approved by the Court. At the completion of the administration, the Claims Administrator will distribute the Net Settlement Fund to eligible Claimants in the form of checks and wire payments, and will continue to do so as long as it is

[5] Released Plaintiffs' Claims include both the exact claims pled in the complaint, and also related claims that "could have been alleged" based on the identical factual predicate. *See* Guidance ¶1.2. (requiring disclosure of differences between released claims and claims of the operative complaint). This is consistent with Ninth Circuit law. *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *2 (C.D. Cal. Apr. 23, 2024) ("[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims based on the identical factual predicate as that underlying the claims in the settled class action.").

economically feasible to make distributions. *See* Stip., ¶¶25-26. As mentioned above, this is not a claims-made settlement and the entire $51 million Settlement Fund is for the benefit of the Class, regardless of how many claims are submitted. *Id.*, ¶11. As discussed further below, when it is no longer feasible to make additional distributions, Class Representatives propose that the unclaimed balance be contributed to Consumer Federation of America ("CFA"), a non-profit, non-sectarian 501(c)(3) organization, or such other *cy pres* recipient approved by the Court. *Id.*, ¶26.

**D. Proposed Schedule of Events**

Class Representatives respectfully propose the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order. The schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (fee motion must be made available to the class before the objection deadline). The schedule will also allow Class Members to have at least 35 days after the issuance of notice to object or request exclusion from the Class. *See* Guidance ¶9 (timeline for objections/opt outs).

| | |
|---|---|
| Deadline for mailing/emailing Postcard Notice to Class Members (the "Notice Date") and posting the Postcard Notice, long-form Notice and Claim Form on Website | ***10 business days after entry of the Preliminary Approval Order (the "Notice Date")*** |
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *PR Newswire* | ***Within 14 calendar days of the Notice Date*** |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of attorneys' fees and expenses | ***No later than 65 calendar days before the Settlement Hearing*** |
| Deadline for submission of requests for exclusion or objections | ***No later than 30 calendar days before the Settlement Hearing*** |
| Deadline for filing reply papers in further support of Class Representatives' and Class Counsel's motions | ***No later than seven (7) calendar days before the Settlement Hearing*** |
| Deadline for submission of Claim Forms | ***Postmarked or received no later than 30 calendar days before the Settlement Hearing*** |
| Settlement Hearing | ***At the Court's convenience, but no fewer than 115 calendar days after entry of the Preliminary Approval Order*** |

## ARGUMENT

### I. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is strongly favored for resolving disputes, especially complex class actions. *See, e.g.*, *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class action. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing. *See* Fed. R. Civ. P. 23(e)(1)(B).[6] By this motion, Class Representatives request that the Court take this first step: preliminary approval of the Settlement.

Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether:

> (A) class representatives and counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) an agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

[6] Rule 23(e)(1) effectively codifies prior case law, which provided that courts should grant preliminary approval after considering whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

Fed. R. Civ. P. 23(e)(2). In reviewing a proposed settlement, "a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Wicks v. Alphabet, Inc.*, No. 18-cv-06245-TLT, 2024 WL 5484607, at *3 (N.D. Cal. Apr. 2, 2024).

Applying the standards set forth above, it is respectfully submitted that the Settlement should be preliminarily approved.

### A. Class Representatives and Class Counsel Have Adequately Represented the Class

As an initial matter, Class Representatives have vigorously litigated the claims in the Action since its inception and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law. Class Representatives and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting an extensive investigation of the claims at issue, including interviews with approximately 30 former Extreme employees (eleven of whom provided information for use in the complaints); (ii) preparing and filing detailed complaints, which expanded the scope of the initial complaint by adding named defendants and particularized allegations supporting scheme claims; (iii) opposing Defendants' extensive motions to dismiss the Amended Complaint and Second Amended Complaint through briefing and oral argument; (iv) moving for and obtaining class certification; (v) researching, drafting, and propounding discovery requests on Defendants; (vi) reviewing several million pages of documents produced during discovery by Defendants and non-parties; (vii) taking and defending 24 depositions, including two expert depositions; and (viii) consulting with experts in the fields of loss causation, market efficiency, damages, supply chain practices, and accounting.

Class Representatives are sophisticated institutional investors: (i) Oklahoma Fire is a government defined benefit pension fund that manages over $4.25 billion in net assets and provides retirement pension benefits to firefighters and their beneficiaries in the state of Oklahoma (ECF No. 140-3); (ii) Oklahoma Police is a government defined benefit pension fund that manages over $3.7 billion in net assets and provides retirement pension benefits for qualified police

officers and their beneficiaries in the state of Oklahoma (ECF No. 140-4); and (iii) Oakland VEBA and Oakland ERS provide retirement services and manage over $2.0 billion in net assets on behalf of thousands of members and their beneficiaries (ECF No. 140-5). Class Representatives also played active roles throughout the Parties' settlement discussions. With an informed understanding, Class Representatives agreed to the Settlement.

Throughout the litigation, Class Representatives had the advice of knowledgeable counsel well-versed in securities fraud cases. Labaton is highly experienced and has a long and successful track record in such cases. *See* Ex. 2 (firm resume); *see also Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, No. 24-CV-05102-TLT, 2026 WL 2070425, at *6 (N.D. Cal. July 16, 2026) ("Labaton has significant experience prosecuting complex securities class actions, deep knowledge of securities law, and an exemplary record of success, and Defendants do not dispute the adequacy of class counsel."). Labaton has served as lead counsel in a number of high-profile matters. *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery); *In re Schering-Plough Corp. / ENHANCE Sec. Litig*., No. 08-397 (D.N.J.) (settlement of $473 million); and *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.) (settlement of $200 million).

**B. The Settlement Resulted from Good Faith, Arm's-Length Negotiations**

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *6 (S.D. Cal. June 8, 2022). Moreover, courts within this Circuit have reasoned that the "use of an experienced mediator is an important factor supporting a finding that a proposed settlement is the product of arms-length negotiations." *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022); *see also Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 22-CV-03023-TLT, 2025 WL 3546227, at *7 (N.D. Cal. Dec. 4, 2025) ("[T]he fact that the Settlement Agreement was negotiated before a neutral mediator weighs in favor of final

approval."); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Here, as noted above, the Parties achieved the Settlement only after two separate mediation sessions before the Mediator, which included the exchange of robust mediation material addressing liability, damages, and ability-to-pay issues. Both sessions ended without an agreement to settle, but the Parties continued discussions with the Mediator immediately following the September 29, 2026 mediation, and later that evening, the Mediator made a recommendation for the Parties to resolve the Action, which the Parties accepted the next day. The negotiations were at all times adversarial and at arm's length, and have produced a result that is in the best interests of the Class. *See Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*, 2026 WL 2031769, at *5 (N.D. Cal. July 13, 2026) (finding the fact that settlement was "reached after extensive investigation, motion practice, discovery, and a full-day session" with Mr. Murphy "weighs in favor of preliminary approval").

### C. The Relief Provided by the Settlement Is Adequate in Satisfaction of Rule 23(e)(2)(C)

#### 1. Many Challenges to Obtaining a Recovery Remained

Although Class Representatives and Class Counsel believe that the claims asserted against Defendants are strong, they recognize the significant challenges and risks they would have faced moving forward, as well as the expense and length of continued litigation through the resolution of Defendants' pending Rule 23(f) petition, the completion of expert discovery, summary judgment, trial, and likely appeals. In evaluating a proposed class action settlement, courts consider the strength of the plaintiff's case and the risks of further litigation. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). That balance strongly favors the Settlement. With fact discovery closed, expert reports due in October 2026, summary judgment

briefing due in January 2027, and trial set for June 2027, each successive stage presented an independent risk of a reduced recovery, or no recovery at all.

**Risks to establishing falsity**. Defendants would have continued to argue—as they had throughout the litigation—that the discovery record does not support the theory of falsity sustained at the pleading stage. As to the alleged misstatements and omissions concerning product demand, Defendants would likely argue at summary judgment and at trial that Class Representatives had adduced no evidence of a "channel stuffing" scheme as that concept is understood under the securities laws, and that discounts, extended payment terms, rebates, stock rotation rights, and pull-in sales are standard industry practice. Defendants likely would have stressed that Extreme never restated its financials, was never the subject of an SEC enforcement action, and received unqualified audit opinions. As to the alleged backlog misstatements and omissions, Defendants likely would have argued that they adequately informed the market at the start of the Class Period that they expected the backlog to decline, and that there was a risk that backlog orders could be canceled. Defendants would also likely argue at summary judgment and trial that certain alleged misstatements and omissions were immaterial, vague, aspirational, accurate, or otherwise not actionable under the securities laws. Class Representatives had responses to each argument, but resolution of these issues would have turned on how this Court (at summary judgment) and a jury (at trial) weighed competing evidence.

**Risks to establishing scienter**. Even if a jury found the challenged statements false or misleading, Class Representatives still would have to prove that each Defendant acted with intent to deceive or deliberate recklessness. A defendant's state of mind is "the most difficult element of proof and one that is rarely supported by direct evidence." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (scienter is a "complex and difficult [element] to establish at trial"). Defendants would have likely argued that, for example, they reasonably believed in the strength and firmness of Extreme's backlog and the infrequency of order cancellations, had no way of knowing whether customers were double-ordering, and did not

anticipate the erosion of Extreme's distributor backlog in 2023, which Defendants would stress was an unprecedented period of supply chain disruption. Class Representatives further anticipated that Defendants would argue that they did not believe that Extreme had the ability or means to engage in channel stuffing or otherwise force its distributors to purchase unneeded products given the relative market position of Extreme with respect to its much larger distributors. These facts raised a strong risk that the Court or a jury would credit Defendants' account that they acted in good faith under unusual or unprecedented market conditions.

**Risks to establishing loss causation and damages**. Class Representatives also faced considerable challenges in establishing damages and the related element of loss causation. Defendants were likely to attack each of the five alleged corrective disclosure events between January 2023 and January 2024, continuing to argue at summary judgment and trial that: the January 25, 2023 disclosure of a backlog decline corrected nothing because Extreme had (purportedly) said that it expected backlog to shrink and of Defendant Thomas's departure revealed nothing about the alleged fraud; the August 24, 2023 announcement repeated already public information; and the November 2023 and January 2024 announcements disclosed only disappointing financial results and not channel stuffing, and did not reveal any truth about the backlog. Moreover, Defendants likely would broadly contend that the disclosures merely informed the market of negative developments that occurred in the ordinary course of Extreme's business and that reflected broader industry trends and developments. *See Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) ("disappointing financial results" are "insufficient to establish loss causation as a matter of law"). These issues, including the extent to which confounding information required disaggregation, would have been resolved through competing expert testimony, and uncertainty about which expert a jury will credit is itself a substantial risk. *See Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020); *Amgen*, 2016 WL 10571773, at *3. Had Defendants prevailed in whole or in part on these issues, the Class would have recovered substantially reduced damages, or none—even if falsity and scienter were successfully established.

**Risks to maintaining the certified Class**. Defendants' pending Rule 23(f) petition presented another meaningful risk. The petition challenges the Court's finding that Class Representatives met their burden of showing that damages are measurable on a class-wide basis under *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Defendants' petition raised substantial risks given that, Defendants contended, their petition involved arguments similar to those recently adopted by the Fourth Circuit Court of Appeals. While Class Representatives vigorously opposed the petition, including on the basis that the Fourth Circuit's ruling did not impact the prevailing Ninth Circuit law on class certification, should the Ninth Circuit have granted Defendants' petition, at minimum an appeal would have delayed resolution of this Action by years and exposed the Class to potential decertification that, if granted, would leave absent members to pursue individual claims most could not economically bring. Even if the Rule 23(f) petition were denied, the Class would face continued risks because Defendants would remain free to move for decertification up through trial, which could result in a narrowed class or decertification altogether. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

**The Settlement in light of recoverable damages**. Class Representatives' damages expert, Dr. Matthew D. Cain, Ph.D. has estimated maximum class-wide damages of approximately $690 million across the full Class Period and approximately $478 million, after netting out gains on pre-Class Period purchases, assuming Class Representatives prevailed on every claim, that each alleged corrective disclosure was fully corrective, and that no confounding information required disaggregation. *See* Declaration of Matthew D. Cain, Ph.D., dated October 15, 2026, submitted herewith as Exhibit 3; Guidance ¶1.3. (motion for preliminary approval shall state the potential class recovery if plaintiffs fully prevailed on all claims). These assumptions would have been vigorously contested by Defendants, who likely would have argued for elimination of certain corrective disclosure dates or disaggregation, and a reduction of damages using single-day disclosure impacts. The $51 million Settlement thus recovers approximately 7.4% to 10.7% of estimated damages under Class Representatives' modeling.

This recovery is a very favorable result for the Class in the face of significant litigation risks. Courts have regularly approved settlements that recover similar percentages of maximum damages. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving gross settlement amount equal to between "5% and 9.5% of non-disaggregated damages"); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (settlement amounting to 2% of damages was "consistent with the typical recovery in securities class action settlements"); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement yielding 6% as "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Moreover, the recovery here compares favorably to the median recoveries in recent securities class actions, as calculated by Cornerstone Research, which conducts annual and semi-annual reviews of securities class action settlements. According to Cornerstone Research, for the period from 2016 through 2024, the median settlement value was $12.1 million, and in 2025 it was $17.3 million. *See* Laarni Bulan and Eric Tam, *Securities Class Action Settlements – 2025 Review and Analysis* (Cornerstone Research 2026), Ex. 4 at 1. In 10b-5 cases with total estimated damages (based on Cornerstone's methodology) ranging from $500 million to $999 million, median settlements in 2025 recovered 6.5% of total estimated damages, and from 2016 to 2025, such median settlements recovered 4.3% of damages. *Id.* at 7. Moreover, the $51 million recovery here is more than *double* the median recovery of $23 million in 10b-5 securities class action cases in the first half of 2026, in which the median percentage of recovery was 5.4%. *See* Laarni Bulan and Eric Tam, *Securities Class Action Settlements – 2026 Midyear Assessment* (Cornerstone Research 2026), Ex. 5 at 6.

In sum, litigation offered no guarantee of a higher recovery, or any recovery at all for the Class. Accordingly, given the certain and prompt recovery of $51 million, the Settlement is a very favorable result well within the range of reasonableness.

**2. Proposed Plan of Allocation for Distributing Relief Treats Class Members Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each other." Here, the Settlement does not improperly grant preferential treatment to Class Representatives or any segment of the Class. Rather, all Class Members that submit a timely and valid Claim Form will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation to be approved by the Court.

At the final Settlement Hearing, Class Representatives will ask the Court to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible Claimants. The Plan of Allocation, which is reported in full in the Notice, was drafted with the assistance of Class Representatives' consulting damages expert, based on the measure of damages for claims under the Exchange Act, and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement amongst eligible Claimants. *See* Notice at ¶¶66-85.

Specifically, the Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Class who were allegedly damaged. The Plan provides for the calculation of a "Recognized Loss Amount" for each properly documented purchase or acquisition of Extreme common stock during the Class Period. *Id*. at ¶¶72-76. A Claimant's total Recognized Claim will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure events alleged in the Action, whether the shares were held through or sold during the PSLRA's 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when they were sold or held. In developing the Plan of Allocation, Class Representatives' consulting damages expert considered the amount of artificial inflation allegedly present in Extreme common stock throughout the Class Period.

The Claims Administrator will calculate Claimants' Recognized Claims using the transactional information provided by Claimants in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the Settlement website, or, for large investors, with hundreds of transactions, via email to the Claims Administrator's electronic filing team. *See generally* Preliminary Approval Order, Ex. 2. Because most securities are held in "street name"

by the brokers that buy them on behalf of clients, the Claims Administrator, Class Counsel, and Defendants do not have Class Members' transactional data and a claims process is required.

Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all Authorized Claimants. Stip., ¶23. Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to Authorized Claimants in the form of checks and wire transfers. *Id.*, ¶¶29-30. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund, at least six (6) months after the initial distribution of such funds, shall be re-distributed to Class Members who have cashed their initial distributions in an economical manner, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution and Taxes. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of Notice and Administration Expenses, Taxes, and unpaid attorneys' fees and expenses, shall be contributed to the Consumer Federation of America ("CFA"), or such other *cy pres* recipient approved by the Court.[7] *Id.*, ¶26. Class Counsel has no affiliation with CFA. Ormsbee

---

[7] CFA is an association of non-profit consumer organizations that was established in 1968 to advance the consumer interest through research, advocacy, and education. *See generally* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; and (iii) providing testimony and comments on legislation and regulations. *See* www.consumerfed.org/issues/investor-protection. CFA has been approved as a *cy pres* beneficiary in several securities settlements in California, including *Vazquez v. Masimo*, No. 23-cv-01546-L-DEB (S.D. Cal.); *Leslie Lilien v. Olaplex Holdings, Inc.*, No. 22-cv-08395-SVW (C.D. Cal.); and *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD (N.D. Cal.).

Decl. ¶5; Guidance ¶8.

**3. Anticipated Legal Fees and Expenses**

As set forth in the Notice, Class Counsel will request attorneys' fees in the amount of 25% of the Settlement Fund and Litigation Expenses of no more than $2.4 million, which will include an application pursuant to the PSLRA for the reasonable costs and expenses (including lost wages) of Class Representatives directly related to their representation of the Class in an aggregate amount not to exceed $45,000. *See* Guidance ¶7. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Class Representatives have been closely involved throughout the litigation and their requests will be based on the amount of time they dedicated to the case and any out-of-pocket costs, which will be detailed in declarations submitted with Class Counsel's motion for attorneys' fees and expenses, to be filed with the Court sixty-five (65) days before the Settlement Hearing.

A 25% fee request is the "benchmark" percentage for attorneys' fees in the Ninth Circuit and is thus reasonable when considering the efforts in this case, results achieved, and fees awarded in other class action settlements with similar recoveries. *See, e.g.*, *Wells Fargo*, No. 22-cv-03811-TLT, 2026 WL 1458903, at *6 (awarding 25% fee in $85 million settlement and recognizing that 25% is the Ninth Circuit benchmark); *CareDx, Inc.*, No. 22-CV-03023-TLT, 2025 WL 3546227, at *11 (awarding 25% fee for $20.25 million settlement); *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361-RS, slip op. at 3 (N.D. Cal. Dec. 4, 2024), ECF No. 481 (approving 29% of $200 million settlement); *see* Guidance ¶6.

A 25% fee would amount to $12,750,000, which would provide a significantly negative "multiplier" of 0.64 on Class Counsel's "lodestar" of approximately $20 million (*i.e.,* provide only 64% of the lodestar). The basis of Class Counsel's fee and expense request will be detailed in its upcoming motion requesting fees and expenses; however, to date, Labaton has spent approximately 36,000 hours litigating the case with a lodestar value of approximately $20 million

at current rates.[8] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 (9th Cir. 2002) (affirming 28% fee award representing 3.65 multiplier and noting that multipliers commonly range from 1.0 to 4.0). *See* Guidance ¶6.

Class Counsel's maximum litigation expense figure of $2.4 million is based upon total-to-date case expenses of approximately $2.4 million, which includes the amounts below, a $45,000 maximum PSLRA reimbursement request for Class Representatives (of $15,000 for Oklahoma Police, $15,000 for Oklahoma Fire, and $15,000 in total for Oakland VEBA and ERS), plus a "cushion" to cover incurred expenses that have not yet been invoiced or expenses that will be incurred between now and Class Counsel's motion for fees and expenses:

| **Category** | **Amount** |
|---|---|
| Experts/Professional Fees | $1,540,000 |
| Mediation Fees | $90,000 |
| Transcript Fees | $190,000 |
| Long-Distance Telephone/Conference Calling | $350.00 |
| Overnight Delivery/Messenger/Postage | $4,000.00 |
| Electronic Research | $40,000.00 |
| Electronic Discovery | $316,000.00 |
| Work-Related Transportation/ Meals/Hotels | $50,000.00 |
| Filing & Service Fees | $15,000.00 |
| Duplicating | $25,000.00 |
| PSLRA Awards | $45,000.00 |
| Cushion for Future Ongoing Costs | $84,650.00 |
| **TOTAL** | **$2,400,000.00** |

### D. Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Class Representatives or any segment of the Class. Rather, all members of the Class, including Class

[8] Additional time will be spent between now and the filing of the fee and expense motion. Accordingly, the final figure presented in its motion requesting fees will differ.

Representatives, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[9] All Class Members that were allegedly harmed as a result of the alleged fraud, and that submit an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Notice at ¶68.

## II. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE

### A. Notice Procedures

Notice of the Settlement will be provided by: (i) direct individual mailing of the Postcard Notice to all Class Members who can reasonably be identified and located, using mailing records obtained from Extreme's transfer agent, as well as information provided to the Claims Administrator by third-party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided); (iii) publication of the Summary Notice in *The Wall Street Journal*, as well as dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting documents on a website established for the Settlement, from which copies can be downloaded and claims can be completed using an online portal. The Claims Administrator will also mail the long-form Notice and Claim Forms upon request. *See* Preliminary Approval Order, ¶¶5-10; *see also* Declaration of Adam D. Walter on Behalf of A.B. Data, Ltd. ("Notice Decl."), ¶¶24-31, submitted herewith as Ex. 6. The Postcard Notice will provide key information regarding the Settlement and the rights of Class Members, and will direct recipients to the website for more detailed information. Social media notifications will not be required, given the ability to reach Class Members directly. Numerous courts have approved similar notice programs. *See, e.g.*, *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-6361, slip op. at 5-8 (N.D. Cal. Aug. 9, 2024) (ECF No. 468); *In re Honest Co., Inc. Sec. Litig.*, No. 21-CV-07405, slip op. at 7-8 (C.D. Cal. May 6, 2025) (ECF No. 311).

[9] Class Representatives will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). Notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012). Notice to the Class in the form and in the manner in the proposed Preliminary Approval Order will fulfill the requirements of due process, the Federal Rules of Civil Procedure, the PSLRA, and the Guidance ¶3.

In addition, the Parties have conferred, and while Class Counsel does not believe a notice under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (2005) *et seq.* ("CAFA"), is required in this Action, which is governed by the Exchange Act, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants will serve a CAFA notice. *See* Stip., ¶20. The Parties are not aware of any other notice requirements applicable to the Action. *See* Guidance ¶10.

**B. Form and Substance of Proposed Notice**

The form and substance of the notice program are also appropriate and reasonable. The notices are written in plain language and provide the relevant information and answers to most questions that Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the forms of notice describe, among other things, the nature of the Action; the definition of the Class; the terms of the Settlement; the considerations that caused Class Representatives to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Class; the procedure for objecting; the procedures for submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The long-form Notice also satisfies the PSLRA's separate disclosure requirements (*see* 15 U.S.C. § 78u-4(a)(7)) by, *inter alia*, stating: (i) the amount of the Settlement determined in the

aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable in the event Class Representatives prevailed; (iii) that Class Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis), and a brief explanation of the fees and expenses sought; (iv) the name, telephone number, and address of a representative of Class Counsel who will be available to answer questions concerning any matter contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Consistent with the Guidance ¶3, the notices include, among other things: (1) "contact information for class counsel to answer questions;" (2) the address for the Settlement website, which will provide deadlines, key information, links to relevant documents, and an online claim portal; (3) "instructions on how to access the case docket;" and (4) information about the Settlement Hearing, including reminders to check the Settlement website and the Court's websites for any changes to the hearing date/time. The notices also provide the procedures and deadlines for submitting Claim Forms, objecting, and requesting exclusion.

**C. Claims Administration**

Class Representatives request that the Court appoint A.B. Data as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. *See* Guidance ¶2. A.B. Data is a recognized leader in legal administration services for class action settlements and legal noticing programs and has successfully administered hundreds of complex securities class action settlements. *See* Notice Decl. ¶2, Ex. A (A.B. Data CV). The Notice Declaration includes a discussion of A.B. Data's comprehensive policies and procedures. *Id.* at ¶¶3-23, Ex. B; *see* Guidance ¶2.2.

Class Counsel selected A.B. Data after a competitive bidding process in which four firms submitted cost proposals. Ormsbee Decl., ¶3; Guidance ¶2.1. All of the cost proposals involved comparable methods of providing notice and claims processing, including use of direct mailing by postcard and email and identification of potential Class Members through third-party brokers

and nominee owners. Class Counsel has engaged A.B. Data to serve as the administrator in nine class actions other than this Action in the past two years (as compared to a total of 28 such new engagements during the same period). *Id.*, ¶4. Class Counsel has found A.B. Data to be a very skilled and capable administrator for these types of cases, with competitive pricing compared to similar administration firms and ample experience in this District and before the Court.

A.B. Data estimates that approximately 125,000 Postcard Notices will be mailed and/or emailed, and that approximately 37,500 claims will be received, based on an estimated 30% response rate. *See* Notice Decl. ¶32; *see also* Guidance ¶1.6.[10] Summary information for three recent cases in which Labaton acted as lead counsel or co-lead counsel is attached to the Notice Decl. as Exhibit C. These cases were selected because they are comparably sized securities class action settlements. *See* Guidance ¶11.

With respect to Notice and Administration Expenses, A.B. Data currently estimates that all fees and expenses in connection with providing notice and administering the Settlement, including the fees of Nominees, may be in the range of $245,000 to $300,000. Notice Decl. ¶40. This estimate assumes, among other things, that approximately 125,000 Postcard Notices will be sent and that no more than 37,500 claims will be received. In the event that actual experience differs from these assumptions, the administrative fees and expenses will differ from this estimate. Notice and Administration Expenses will be paid from the Settlement Fund. *See* Stip., ¶20.[11]

## **CONCLUSION**

For the foregoing reasons, Class Representatives respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) approving the manner and forms of notice to the Class; (iii) setting

[10] The estimated number of Postcard Notices is based on past matters and publicly available trading history of Extreme stock. Class sizes in cases involving publicly traded securities remain rough estimates until brokers and nominees have provided information about beneficial shareholder counts. Notice Decl., ¶32.

[11] The Net Settlement Amount available to participating Class Members after deducting estimated attorneys' fees, litigation expenses, and Notice and Administration Expenses may be approximately $35,550,000 or approximately 70% of the Settlement Amount. However, the Settlement Fund will be invested in T-Bills and the interest earned (net of Taxes) will offset some of these costs.

a date for the Settlement Hearing; (iv) appointing A.B. Data as Claims Administrator; and (v) granting such other and further relief as may be required.

Dated: October 15, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: /s/ *Lauren A. Ormsbee*

Lauren A. Ormsbee (*pro hac vice*)
Jesse L. Jensen (*pro hac vice*)
Adam M. Federer (*pro hac vice*)
Danielle S. Lazarus (pro hac vice)
Jacqueline E. Lacovara (pro hac vice)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
jjensen@labaton.com
afederer@labaton.com
dlazarus@labaton.com
jlacovara@labaton.com

*Class Counsel and Counsel for Class Representatives*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (Bar No. 250893)
Reed R. Kathrein (Bar No. 139304)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

*Liaison Counsel for the Class*

## APPENDIX A

## PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **1. Information About the Settlement** | |
| (1) Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | Motion at 5 n. 3 |
| (2) Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | Motion at 8 n. 5 |
| (3) The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | Motion at I.C.1 |
| (4) Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | NA, Motion at 8 |
| (5) The proposed allocation plan for the settlement fund. | Motion at I.C.2.; Proposed Notice ¶¶66-87 |
| (6) If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | Motion at II.C.; Notice Decl. ¶¶32-39, Ex. C |
| (7) In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | Motion at 6-7 |

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **2. Settlement Administration** | |
| (1) Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administration over the last two years. | Motion at II.C.; Ormsbee Decl. ¶¶3-4 |
| (2) Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | Motion at II.C; Notice Decl. ¶¶3-42, Ex. B |
| **3. Notice** | |
| The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information: | *See generally* proposed notices annexed as Exs. A-1 to A-4 of the proposed Preliminary Approval Order |
| (1) Contact information for class counsel to answer questions. | Proposed Notice ¶¶6, 65; Proposed Summary Notice p. 3 |
| (2) The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, a claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | *See generally* proposed notices |
| (3) Instructions on how to access the case docket via PACER or in person at any of the court's locations. | Proposed Notice ¶¶59, 63 |
| (4) The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | Proposed Notice p. 2 & ¶¶57, 59; Proposed Summary Notice p. 2 |
| (5) A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | Proposed Notice p. 3 & ¶59 |

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | Motion at II.A. & B. |
| The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | Motion at II.A. |
| Inclusion of suggested language in class notices:<br><br>“This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www.    .com, by contacting class counsel at            , by accessing the Court docket in this case, for a fee, through the Court’s Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.<br><br>PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK’S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.” | Proposed Notice ¶¶63-64 |
| **4. Opt-Outs** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should | Proposed Notice ¶¶45-48 |

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | |
| **5. Objections** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | Proposed Notice ¶¶52-55 |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | Proposed Notice ¶¶52-55 |
| Below is suggested language for inclusion in class notices:<br>"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you should object.<br>Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( ______v. ______, Case No. ______), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____ ." | Proposed Notice ¶¶52-53 |
| **6. Attorneys' Fees and Costs** | |
| Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier. | Motion at I.C.3. |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | Motion at I.C.3. |

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | N/A |
| **7. Service Awards** | |
| The parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients. | Motion at 20 |
| **8. Cy Pres Awardees** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | Motion at 19; Proposed Notice ¶85 |
| The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | NA; Motion at 19-20 Ormsbee Decl. ¶5 |
| In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata or awarded to cy pres recipients or to the relevant government authorities. | Motion at 19 |
| **9. Timeline** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | Motion at 9 |
| **10. Class Action Fairness Act (CAFA) and Similar Requirements** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. In addition the parties should address substantive compliance with CAFA. | Motion at 23; Stipulation ¶20 |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | NA; Motion at 23 |

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **11. Comparable Outcomes** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e., settlements involving the same or similar claims, parties, issues):<br><br>(1) The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim. | Motion at II.C.;<br>Notice Decl. Ex. C |
| (2) Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. | NA |
| (3) Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class. | NA |
| Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | Notice Decl. Ex. C |
| **12. Electronic Versions** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district used Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | Done |
| **13. Overlapping Cases** | |
| Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | N/A |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via ECF on all registered participants.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 15, 2026

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee